UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
PATSY JOINNIDES,

                    Plaintiff,                          **12-CV-5682 (JS) (AKT)**

        -against-

FLORAL PARK-BELLEROSE UNION FREE
SCHOOL DISTRICT, BOARD OF EDUCATION OF
THE FLORAL PARK-BELLROSE UNION FREE
SCHOOL DISTRICT,

                    Defendants.
-----------------------------------------------------------------------X

---

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO AMEND THE COMPLAINT

---

Respectfully Submitted,

Joshua Beldner
The Law Office of Steven A. Morelli, P.C.
1461 Franklin Avenue
Garden City, NY 11530
(516) 393-9151

*Attorneys for Plaintiff*

1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ i

PRELIMINARY STATEMENT ........................................................... 1

STATEMENT OF RELEVANT FACTS .............................................. 2

    A. Plaintiff's Original Complaint ......................................... 2

    B. Written Discovery .......................................................... 4

    C. Plaintiff's Deposition .................................................... 5

    D. Scheduling Depositions of District Witnesses ................. 6

    E. Mr. Opiekun's Deposition ............................................ 8

    F. Plaintiff's Participation on the CBAC ............................ 9

    G. Defendants' Proposed Motion for Summary Judgment.... 10

    H. Plaintiff's Proposed Amended Complaint ..................... 12

ARGUMENT ................................................................................ 12

    POINT I
    PLAINTIFF HAS SHOWN GOOD CAUSE UNDER RULE 16 ........................ 13

    POINT II
    THE COURT SHOULD GRANT PLAINTIFF'S MOTION
    UNDER RULE 15 BECAUSE DEFENDANTS ARE UNABLE
    TO SHOW PREJUDICE, BAD FAITH, OR FUTILITY ..................................... 18

        A. The Proposed Amendment is Made in Good Faith.................. 18

        B. Allowing the Amendment Would Not Cause Undue Delay
        Or Unfairly Prejudice Defendants .............................................. 19

        C. Allowing the Amendment Would Not Be Futile ...................... 22

CONCLUSION............................................................................... 25

## TABLE OF AUTHORITIES

**FEDERAL CASES**

Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.,
    404 F.3d 566 (2d Cir. 2005)....................................................................18

Alfadda v. Fenn,
    1993 WL 307757 (S.D.N.Y. Aug. 6, 1993).........................................21

Assam v. Deer Park Spring Water, Inc.,
    163 F.R.D. 400 (E.D.N.Y. 1995) ...............................................16, 20

Bernhardt v. Interbank of New York,
    18 F.Supp.2d 218 (E.D.N.Y. 1998) ......................................................23

Bieluch v. Sullivan,
    999 F.2d 666 (2d Cir. 1993)..................................................................22

BNP Paribas Mortg. Corp. v. Bank of America, N.A.,
    866 F.Supp.2d 257 (S.D.N.Y. 2012).....................................................25

Bridgeport Music Inc. v. UMG Recordings, Inc.,
    2008 WL 113672 (S.D.N.Y. Jan. 10, 2008) ........................ 13, 16-17, 21

Catapano v. Western Airlines, Inc.,
    105 F.R.D. 621 (E.D.N.Y. 1985) .........................................................19

Cummings-Fowler v. Suffolk County Community College,
    282 F.R.D. 292 (E.D.N.Y. 2012) ........................................................21

Espinal v. Goord,
    558 F.3d 119 (2d Cir. 2009)..................................................................23

Friedl v. City of New York,
    210 F.3d 79 (2d Cir. 2000)....................................................................16

Gilford v. City of New York,
    2004 WL 1574695 (S.D.N.Y. 2004)......................................................23

Green v. Wolf Corp.,
    50 F.R.D. 220 (S.D.N.Y. 1970) ...........................................................19

Gregory v. Daly,
    243 F.3d 687 (2d Cir. 2001)..................................................................23

Hampton Bays Connections, Inc. v. Duffy,
212 F.R.D. 119 (E.D.N.Y. 2003) .........................................................17

Hanlin v. Mitchelson,
794 F.2d 834 (2d Cir.1986).................................................................21

Kaluczky v. City of White Plains,
57 F.3d 202 (2d Cir. 1995)..................................................................22

Lincoln v. Potter,
418 F.Supp.2d 443 (S.D.N.Y. 2006).....................................................17

Leung v. New York University,
2010 WL 1372541 (S.D.N.Y. March 29, 2010) ....................................23

Middle Atl. Utils. Co. v. S.M.W. Dev. Corp,
392 F.2d 380 (2d Cir. 1968)................................................................19

Morris v. Lindau,
196 F.3d 102 (2d Cir. 1999)................................................................22

Oneida Indian Nation of New York State v. County of Oneida,
199 F.R.D. 61 (N.D.N.Y. 2000)...........................................................18

Parker v. Colombia Pictures Industries,
204 F.3d 326 (2d Cir. 2000).................................................................19

Pickering v. Board of Ed. of Township High School Dist.,
391 U.S. 563 (1968)............................................................................14

Quattrone v. Erie 2 Chautauqua-Cattaraugus Bd. of Co-op. Educational Services,
2011 WL 294496 (W.D.N.Y. 2011) ....................................................17

Rachman Bag Co. v. Liberty Mut. Ins. Co.,
46 F.3d 230 (2d Cir. 1995)..................................................................19

Raniola v. Bratton,
243 F.3d 610 (2d Cir. 2001).................................................................23

Richardson v. Greenshields Securities, Inc. v. Lau,
825 F.2d 647 (2d Cir. 1987)...........................................................19, 20

Rivera v. Dyett,
1993 WL 54652 (S.D.N.Y. 1993).........................................................21

Robinson v. Town of Colonie,
    1993 WL 191166 (N.D.N.Y. 1993) ..................................................17

Ruotolo v. City of New York,
    514 F.3d 184 (2d Cir. 2008)...........................................................20

Sassone v. Quartararo,
    598 F.Supp.2d 459 (S.D.N.Y. 2009)................................................23

San ve Tic. A.S. v. Joinpac, Inc.,
    1993 WL 126890 (S.D.N.Y. April 16, 1993) ....................................18

Samad Bros., Inc. v. Bokara Rug Co., Inc.,
    2010 WL 2835754 (S.D.N.Y. June 30, 2010) ...................................16

Securities and Exchange Commission v. PCI Telecommunications, Inc.,
    207 F.R.D. 32 (S.D.N.Y. 2002) ..................................................17, 20

Schiller v. City of New York,
    2009 WL 497580 (S.D.N.Y. Feb. 27, 2009)..................................16, 19

Simon v. City of New York,
    2011 WL 317975 (E.D.N.Y. Jan. 3, 2011) ......................................25

State Farm Mut. Auto Ins. Co. v. CPT Medical Services,
    246 F.R.D. 143 (E.D.N.Y. 2007) ...................................................21

State Teachers Retirement Bd. v. Fluor Corp.,
    654 F.2d 843 (2d Cir. 1981)..........................................................19

S.S. Silberblatt, Inc. v. East Harlem Pilot Block-Bldg. 1 Hous. Dev. Fund. Co., Inc.,
    608 F.2d 28 (2d Cir. 1979)...........................................................21

United States v. Continental Ill. Nat'l Bank & Trust of Chicago,
    889 F.2d 1248 (2d Cir. 1989).........................................................21

Wallace v. Suffolk County Police Dept.,
    393 F.Supp 251 (E.D.N.Y. 2005) ...................................................23

Williams v. Citigroup Inc.,
    659 F.3d 208 (2d Cir. 2011)..........................................................25

Xpressions Footwear Corp. v. Peters,
    1995 WL 758761 (S.D.N.Y. Dec. 22, 1995) ....................................20

Zomba Recording Corp. v. MP3.Com, Inc.,
    2001 WL 770926 (S.D.N.Y. July 10, 2001) ........................................................17

Zeigan v. Blue Cross and Blue Shield,
    607 F.Supp. 1434 (S.D.N.Y. 1985) ........................................................19

Zelnik v. Fashion Institute of Technology,
    464 F.3d 217 (2d Cir. 2006)........................................................22

## FEDERAL RULES

Fed. R. Civ. P. 15 ........................................................2, 12, 13, 18, 19

Fed. R. Civ. P. 16 ........................................................2, 13, 16, 17, 18

## PRELIMINARY STATEMENT

Plaintiff Patsy Joinnides makes the current application for leave to amend her Complaint, based upon information she obtained during the course of discovery in this case. In her original Complaint, Plaintiff asserts that she was retaliated against by the Defendants for exercising her First Amendment right to free speech. Plaintiff still maintains she was retaliated against for the Fall 2010 protected activity she engaged in, as set forth in her original Complaint. However, through discovery, Plaintiff obtained evidence demonstrating that Defendants also retaliated against for her engaging in protected activity, as a private citizen, as a member of the Citizens Budget Advisory Committee ("CBAC") in 2011 and 2012. As a member of the CBAC from October 2011 to June 2012, Plaintiff expressed strong opinions and criticisms of the District, its Board of Education, and its policies. Specifically, Plaintiff was critical of Defendants' mismanagement of financial assets, and its consistent overestimation of budget expenditures. As such, as a member of the CBAC, Plaintiff spoke out as a citizen and taxpayer about matters of public concern. The "justification," for Defendants' decision to deny Plaintiff employment in 2012, which is predicated upon the same type of protected activity which formed the basis of Plaintiff's original First Amendment claim, first became known to Plaintiff during the deposition of Superintendent James Opiekun, which took place during the final week of discovery. Plaintiff now seeks to include her CBAC activity as an additional basis for her existing First Amendment retaliation claim.

Despite exercising diligence in this case, Plaintiff could not have moved to amend the pleading by the deadline set forth in the Court's Scheduling Order because she was simply unaware of the information which now forms the basis of her proposed amendment. In fact, at the time the deadline for amendment of pleadings expired, Defendants had not even served

responses to Plaintiff's discovery demands, despite several deficiency letters sent by Plaintiff's counsel. As a result of this delay, Plaintiff first became aware of the critical information which forms the basis for her amendment at the conclusion of discovery.

As set forth below, Plaintiff has established the requisite "good cause" to permit amendment under Federal Rule 16. Likewise, because there is no undue prejudice, bad faith, undue delay, or futility, Plaintiff's motion to amend should be granted under Federal Rule 15.

## STATEMENT OF RELEVANT FACTS

### A.    *Plaintiff's Original Complaint*

On November 16, 2012, Plaintiff Patsy Joinnides commenced this action against Defendants Floral Park-Bellerose Union Free School District, and the Floral Park-Bellerose Union Free School District Board of Education ("Defendants") via the filing of a Summons and Complaint. (Pl. Ex. A).[1] The Complaint includes: (1) an age discrimination claim for violation of her right to Equal Protection under the Fourteenth Amendment to the U.S. Constitution; and (2) a First Amendment retaliation claim. (Id. at ¶¶ 69-70.)

As set forth in the Complaint, Plaintiff worked at the Defendant District from 1996 to 2008, as a Title I Reading Assistant, and Special Education Assistant. (Id. at ¶¶ 19-26.) In 2007, Plaintiff began attending Adelphi University for purposes of obtaining her Master's Degree, and briefly left the District, voluntarily, in June 2008, so that she could fulfill her student teaching requirements. (Id. at ¶¶ 26-29.) After obtaining her New York State Teaching Certification, Plaintiff returned to the District, and worked from September 2009 to June 2010 as a Permanent Substitute Teacher at John Lewis Child School. (Id. at ¶¶ 30-32.)

---

[1] All citations to the exhibits annexed to the Sworn Declaration of Joshua Beldner are referenced herein as "Pl Ex. __."

2

Additionally, as set forth in the Complaint, in September and October 2010, Plaintiff worked regularly at the Defendant District as a per-diem Substitute. (Id. at ¶ 38.) In November 2010, however, Plaintiff and her husband vocally expressed their opposition to a $5,000,000 bond proposed by the District to the Floral Park community, which was to be used to fund improvements to the District's boilers, lighting system, and windows. (Id. at ¶¶ 39-47.) Plaintiff and her husband, who are residents of Floral Park, spoke out in opposition to the bond at Board of Education meetings, and in letters which were published in the community newspaper. (Id.) The bond was rejected by the community following a referendum. (Id. at ¶ 48.) Following the November 8, 2010 Board meeting, Plaintiff's name was removed from substitute list, and she did not work again at the District until September 2012, following then-Superintendent Lynn Pombonyo's retirement from the District.  (Id. at ¶¶ 53, 58, 62.)

In September and October 2012, Plaintiff once again began working as a Substitute at the District. (Id. at ¶ 62.) On October 16, 2012, however, Plaintiff met with new Superintendent, Dr. James Opiekun. (Id. at ¶ 65.) At the meeting, Mr. Opiekun told Plaintiff that she could no longer work for the District. (Id.) Specifically, as set forth in the Complaint, Mr. Opiekun told Plaintiff that the Board of Education "had a long institutional memory," and that the Board was "afraid that you will blur the lines between homeowner/taxpayer and employee." (Id.) Mr. Opiekun also stated that employees for the District needed to be "good will ambassadors for the District." (Id.) Mr. Opiekun did, however, tell Plaintiff that he would speak to the Board again regarding her employment. (Id. at ¶ 66.) On October 25, 2012, Mr. Opiekun emailed Plaintiff and informed her that she would not be added to the substitute teacher list, and therefore could not work in the District. (Id. at ¶ 68.)

**B.**     *Written Discovery*

On December 31, 2012, Defendants filed an Answer. (D.E. #6.)[2] On January 9, 2013, the parties entered into a Case Management and Scheduling Order. (D.E. #10.) In accordance with the Order, the deadline for joinder of additional parties and amendment of the pleadings was April 5, 2013. (Id.) The deadline for fact discovery was set for July 1, 2013. (Id.)

On February 11, 2013, Plaintiff served upon Defendants her First Combined Discovery Demands. (Beldner Decl. at ¶ 5; Pl. Ex. M.) Notably, Plaintiff's Interrogatory #15 stated: "Identify all individuals who were involved in the decision to deny Plaintiff's application to the District's substitute list in 2012, and provide the basis for that decision." (Pl. Ex. M at p. 8.)

As of May 20, 2013, Defendants had failed to respond to Plaintiff's discovery demands. (Beldner Decl. at ¶ 6.) As such, on that date, counsel for Plaintiff sent counsel for Defendants a deficiency letter, noting that said letter was a good faith effort to resolve the issue without judicial intervention. (Pl. Ex. C.) On June 3, 2013, counsel for Plaintiff sent counsel for Defendants a second deficiency letter, given that as of that date, Defendants had failed to provide Responses to Plaintiff's Interrogatories. (Pl. Ex. D.) On or about June 19, 2013, Defendants finally served Responses to Plaintiff's Interrogatories. (Pl. Ex. E.)[3] Notably, in response to Interrogatory #15, listed above, Defendants stated: "Notwithstanding and without waiving or limiting said objections, Dr. Opiekun did not make a recommendation to the Board to place Plaintiff on the 2012 substitute list."

On July 1, 2013, counsel for Plaintiff sent counsel for Defendants letter regarding outstanding discovery. (Pl. Ex. F.) As set forth in the letter, Plaintiff served Supplemental

---

[2] All citations to the Court's Docket in this case are referenced herein as "D.E. # ___."

[3] One reason provided for the delay was that the associate who was originally handling this case for Miranda Sambursky Slone Sklarin Verveniotis, counsel for Defendants, left the firm in 2013.

Document Requests on May 28, 2013, and as of July 1, 2013, no responses were provided by Defendants. (Id.) Defendants provided responses to Plaintiff's Supplemental Document Requests on July 9, 2013. (Beldner Decl. at ¶ 9.)

On August 5, 2013, Hon. Judge Tomlinson extended the time to complete fact discovery until September 30, 2013. (Pl. Ex. G.) On August 14, 2013, counsel for Plaintiff served Notices of Deposition for three District witnesses: former Superintendent Lynn Pombonyo, current Superintendent James Opiekun, and Superintendent Secretary Millie Del Greco. (Pl. Ex. H.) The District witnesses were noticed for deposition on September 20, 2013, and September 24, 2013, respectively. (Id.)

## C.    *Plaintiff's Deposition*

In August 2013, counsel for both parties discussed scheduling Plaintiff's deposition for August. (Beldner Decl. at ¶ 10.) On August 27, 2013, after numerous email exchanges, counsel for the parties confirmed that Plaintiff and her husband's depositions would take place on September 18, 2013, and September 19, 2013, respectively. (Id. at ¶ 12.) On September 16, 2013, however, just two days before Plaintiff's scheduled deposition, counsel for Defendants called counsel for Plaintiff and requested that the depositions of Plaintiff and her husband be rescheduled. (Beldner Decl. at ¶ 13.) Counsel for Defendants stated that Defendants were in the process of gathering and producing an additional set of discovery documents, which would likely be voluminous. (Id. at ¶ 14.) Given the additional documents to be produced, counsel for Plaintiff agreed to reschedule Plaintiff's deposition for September 24, 2013. (Id. at ¶ 14.) On September 20, 2013, Defendants served upon Plaintiff an additional 331 documents. (Id. at ¶ 15.)

Plaintiff was deposed on September 24, 2013. At her deposition, Plaintiff testified that she believed the reason for her being denied an opportunity to work at the District in the Fall of

2012 was due to her vocal opposition to the $5,000,000 bond proposed by the District in 2010. (Pl. Ex. J at p. 157.) In particular, Plaintiff testified, as she asserted in the Complaint, that at her meeting with Mr. Opiekun in October 2012, Mr. Opiekun stated that "every school has an institutional memory, and this Board of Education seems to have a long institutional memory." (Pl. Ex. J at p. 236.) Plaintiff also testified that Mr. Opiekun told her at their meeting that the Board was afraid that she would "blur the line" between taxpayer/homeowner and employee, and that the Board was concerned that if she was to "see something wrong, you will talk about it." (Id. at p. 234.) Plaintiff further testified that in September 2012, Superintendent Secretary Millie Del Greco told her "I'm so happy you are back on the sub list. It broke my heart when she made me take you off the sub list." (Id. at pp. 133-35.)

**D.     *Scheduling Depositions of District Witnesses***

On September 23, 2013, counsel for Plaintiff attempted to obtain available dates for depositions of District witnesses. (Pl. Ex. I at p. 6.) Counsel for Plaintiff was scheduled to commence a trial in U.S. District Court before Hon. Judge Spatt in the matter of *Hughes v. Kevin Anderson, et al (09-CV-4042)* on October 7, 2013, and informed counsel for Defendants that the depositions needed to take place before that date. (Beldner Decl. at ¶ 16.) Counsel for Defendants notified that the District witnesses would not be available prior to the September 30, 2013 deadline for the completion of all discovery. (Pl. Ex. I at p. 6.)

On September 27, 2013, the Court granted the parties' request for an additional 30 days to complete discovery, extending the deadline until October 30, 2013. (D.E. #18.) On October 2, 2013, due to the shutdown of the federal government, the trial in the *Hughes* case was postponed until October 15, 2013. (Beldner Decl. at ¶ 18.) That day, counsel for Plaintiff proposed deposing the District's witnesses on October 4, 2013, or October 8, 2013. (Id.; Pl. Ex. I at p. 4.) The

6

following day, counsel for Plaintiff proposed an additional date – October 12, 2013, for depositions. (Pl. Ex. I at p. 3.) On October 7, 2013, counsel for Plaintiff followed up again, and stated that if need, be, he could do the depositions on October 11, 2013. (Id.) Counsel for Defendants responded by stating he was working with the District witnesses, but that counsel for Plaintiff would "probably have to free up some time after the 15th to get these done." (Id.)

On October 10, 2013, again due to the government shutdown, the *Hughes* trial was postponed until October 21, 2013. (Beldner Decl. at ¶ 21.) On October 11, 2013, counsel for Plaintiff informed counsel for Defendants of the trial's postponement, and stated that he was available to conduct the depositions on October 14, October 15, October 16, and October 17, 2013. (Pl. Ex. I at p. 2.) On October 15, 2013, counsel for Defendants responded by stating that he was trying to coordinate everybody's schedule, and that he would get back to counsel for Plaintiff. (Pl. Ex. I at pp. 1-2.) Counsel for Plaintiff responded by writing, via email:

> I've proposed probably 10 days over the last four weeks, and none have worked on your end. I know you're just trying to coordinate with everyone's schedule, but it is getting frustrating, given that we asked for more time at end of September knowing that I had the trial starting on the 15th, and for some reason we couldn't find a date that worked during those first two weeks of October. Steve is telling me to just serve subpoenas on a day that works for me, or to write the court. Obviously, I don't want to do that, but I'm only asking for 2 hours maximum with each witness. I can do it early in the morning, late evening -- whatever works. But these need to get done.

(Pl. Ex. I at p. 1.) The parties finally agreed on October 25, 2013 as the date for deposing the remaining District witnesses – Mr. Opiekun and Ms. Del Greco. (Beldner Decl. at ¶ 24.) The *Hughes* trial commenced on October 21, 2013, and concluded on October 31, 2013.

### E.      *Mr. Opiekun's Deposition*

On October 25, 2013, counsel for Plaintiff finally deposed Mr. Opiekun. (Pl. Ex. K.) At his deposition, Mr. Opiekun testified that after Plaintiff was substitute teaching at the District in the Fall of 2012, two members of the Board of Education approached him and told him that there were "issues" regarding Plaintiff's employment. (Pl. Ex. K at p. 37; 41-42.) Mr. Opiekun testified that Board members told him that during her time on the CBAC, she was "very critical" of the Board of Education. (Pl. Ex. K at p. 51.) Specifically, Mr. Opiekun testified that as a member of the CBAC, "the processes that the board was using to build the budget were under constant criticism by Miss Joinnides at the committee level. By default then, that would be a criticism of the Board." (Id.) At his deposition, Mr. Opiekun stated that he met with Plaintiff and told her that "every District has an institutional memory," which, he acknowledged, "can shape decisions about people." (Id. at p. 66-67.) Mr. Opiekun also testified that he spoke about employees "blurring lines," stating that "when somebody lived in a district as an employee, that sometimes it was difficult not to blur the line between the different roles that you have as a resident." (Id. at pp. 69-70.)

Mr. Opiekun further testified that after his meeting with Plaintiff, he brought up the topic of her employment at a Board of Education meeting. (Id. at p. 75.) Mr. Opiekun testified that at this meeting, Board members opposed Plaintiff's employment due to her "behavior" on the CBAC. (Id. at p. 79.) In particular, Mr. Opiekun testified as follows:

> Q:      Did anyone ever communicate to you that [Plaintiff] had threatened anyone?
>
> A:      No, I don't know that.
>
> Q:      Did either Miss Horan, Miss Ferone, Mr. Tsourpros say that she had threatened violence against anybody?

A:      That did not come up, no.

Q:      But in this conversation that you had heard, really it was just a general, her being disruptive on the committee, and her behavior on the committee is what caused the concerns, is that correct?

A:      Yes.

(Id. at p. 80.) Based on the information provided by the Board regarding Plaintiff's service on the CBAC, Mr. Opiekun decided to not recommend Plaintiff to be appointed to the substitute list for the 2012-2013 school year. (Id. at p. 91.) At the meeting, Board members also discussed Plaintiff's position in 2010 regarding the proposed bond that was rejected by the community. (Id. at pp. 91-92.) At the time he made his decision, the only information Mr. Opiekun had regarding Plaintiff's activity on the CBAC came from members of the Board, and Assistant Superintendent Michael Fabiano. (Id. at p. 96.) Mr. Fabiano also made Mr. Opiekun aware that Plaintiff had opposed the bond in 2010. (Id. at p. 93.)

### F.    *Plaintiff's Participation on the CBAC*

Plaintiff was diagnosed with bladder cancer in August 2011. (Pl. Ex. A at ¶ 54.) Because Plaintiff was undergoing chemotherapy in the Fall of 2011, and had surgery in January 2012, she was unable to attend several of the CBAC meetings. (Joinnides Decl. at ¶ 22.) [4] Additionally, at many of the meetings Plaintiff did attend, she was very sick, sore, and weak. (Id.) Nevertheless, as a member of the CBAC, at meetings and though email correspondence, Plaintiff did express strong opinions regarding the Board of Education and the District's Administration at the time. (Id. at ¶ 19.) The basis for Plaintiff's criticism of the Board was the New York State Comptroller's Audit Report that was published in December 2008. (Id. at ¶ 25.) Upon reading the 2008 Audit Report, Plaintiff learned that for four consecutive years, the District had

---

[4] All citations to the Sworn Declaration of Patsy Joinnides, dated January 16, 2014, which was submitted with Plaintiff's Rule 56.1 Counterstatement of Facts, are referenced herein as "Joinnides Decl. at ¶ ___."

overestimated budget expenditures and held taxpayer monies in the unreserved general fund in an amount six to eight times the maximum allowed by law. (Id. at ¶ 25.) As a result, during her time on the CBAC, Plaintiff expressed her opinion that the District's Administration was "top heavy," and that the cost of the Administration's salaries was too high. (Id. at ¶ 19.)

Plaintiff also openly criticized Board policies that she felt were not in the best interests of community residents, including the consistent overestimation of budget expenditures, and the mismanagement of financial resources. (Id.) Plaintiff strongly advocated against fiscal cuts to academic programs in the District, when there were other viable options for savings.[5] (Id.) Plaintiff also expressed these strong, critical opinions to other CBAC members in emails. (Id.) As Plaintiff testified at her deposition, "I was charged as a member – a representative who speaks [for] the community whose responsibility was to carry out the public trust and bring forth their opinion." (Pl. Ex. J at p. 212.) However, despite expressing strong opinions regarding Board policies and the management of the District's financial resources, Plaintiff did not act rudely, or disrespectfully towards anyone while at CBAC meetings. (Joinnides Decl. at ¶ 22.)

## G.    *Defendants' Proposed Motion for Summary Judgment*

On December 20, 2013, Defendant served its Rule 56.1 Statement of Facts, and on January 17, 2014, Plaintiff served her Counterstatement of Facts. (Beldner Decl. at ¶ 41.) Plaintiff "disputed" Defendant's assertion that Plaintiff's allegations with respect to First Amendment retaliation solely related to her speech concerning her opposition to the November

---

[5] Evidently, Plaintiff's criticism of the Board as a member of CBAC was well founded. In February 2014, the New York State Comptroller's Office published another audit of the District, covering July 1, 2011 to June 30, 2013. (Pl. Ex. L.) The Audit found that over the past five years, District officials consistently overestimated expenditures, totaling $12.5 million. (Id. at p. 5.) The report further states: "The consistent overestimation of expenditures resulted in the District not using fund balance that was appropriated. This allowed District officials to make it appear that they were in compliance with the 4 percent statutory limit when, in fact, they were not. As a result, the Board and District officials have not adequately reflected the District's financial condition to the taxpayers, and the District may have levied and collected more taxes than necessary to fund District operations." (Id.)

2010 bond referendum. Because Plaintiff provided oral testimony in this case in September 2013, she was not aware of the justifications that Defendants were asserting for their denying her employment. (Joinnides Decl. at ¶ 34.) Rather, she was simply told that she was being denied the position because of the Board's "long institutional memory." (Id.) Significantly, Plaintiff first learned that her participation on the CBAC was the asserted justification for denying her employment upon reading the transcript from Mr. Opiekun's deposition, which took place on October 25, 2013. (Id. at ¶ 18.) After reviewing the testimony, Plaintiff maintains that she was retaliated against for: (1) her vocal opposition to the bond referendum in November 2010; *and* (2) her vocal criticism of the Board, its policies, and positions during her participation as a representative of the community on the CBAC Committee. (Id. at ¶ 35.)

On January 22, 2014, counsel for Defendants filed a letter requesting a pre-motion conference, as a pre-cursor to its anticipated Motion for Summary Judgment. (D.E. # 21.) In their letter, Defendants stated that "Plaintiff's new post-discovery allegations, raised for the first time in opposition to summary judgment, should not be considered by the Court." (Id.) Defendant has not yet filed its motion for summary judgment.

On January 28, 2014, counsel for Plaintiff filed a letter in response, stating "Plaintiff is not seeking to assert a new claim or cause of action. Rather, she is simply utilizing facts obtained in discovery to amplify and supplement her original First Amendment retaliation claim." (D.E. #22.) Plaintiff's counsel also requested permission to file an Amended Complaint, to insert her CBAC activity as an additional basis for her First Amendment Claim. (Id.)

At the pre-motion conference held on April 4, 2014, Hon. Judge Seybert granted Plaintiff permission to file the present motion to amend the Complaint. (D.E. #24.)

**H.**     *Plaintiff's Proposed Amended Complaint*

The proposed Amended Complaint contains just a few additional factual allegations that were not included in the original Complaint, relating to Plaintiff's service on the CBAC. (Pl. Ex. B.) Specifically, the Amended Complaint contains the following additional allegations:

> 59.     In or around October 2011, while she was in the process of undergoing chemotherapy, Plaintiff began serving as a member of the Citizens Budget Advisory Committee ("CBAC"); a committee made up of community residents tasked to assist the District in formulating the budget. Board members and District Administrators, including Superintendent Pombonyo and Assistant Superintendent Michael Fabiano, participated in, and attended CBAC meetings.

> 60.     During her time on the CBAC, Plaintiff expressed strong opinions regarding the District and the Board of Education, and openly criticized policies that she felt were not in the best interests of community residents, including the consistent overestimation of budget expenditures, and the mismanagement of financial resources. Plaintiff also expressed strong opinions that the District's Administration was "top heavy," and that the cost of the Administration's salaries was too high."

> 61.     Additionally, Plaintiff strongly advocated against fiscal cuts to academic programs in the District, when there were other viable options for savings. Several of Plaintiff's positions regarding the budget were unpopular with the Board, and the District's Administration. Although Plaintiff was critical of the District, and disagreed with many of the Board's proposals, she did not act rudely or disrespectfully towards any individuals while at CBAC meetings.

> 62.     Plaintiff served on the CBAC until June 2012.

(Pl. Ex. B at ¶¶ 59-62.)[6]

## ARGUMENT

It is well settled that under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend the party's pleading "shall be freely given as justice so requires." Fed. R. Civ. P. 15 (a). However, when a party moves to amend the pleadings after the deadline to do so in the court's

---

[6] In her proposed Amended Complaint, Plaintiff also includes additional language in the Preliminary Statement and Claims for Relief sections, to reflect the additional allegations asserted.

scheduling order has passed, she must first satisfy the good cause requirement of Federal Rule 16(b). Parker v. Columbia Pictures Industries, 204 F.3d 326, 339-40 (2d Cir. 2000). If the court determines that the party seeking amendment satisfies Rule 16, the determination then shifts to whether the Plaintiff satisfies the requirements of Rule 15. Lincoln v. Potter, 418 F.Supp.2d 443, 453-55 (S.D.N.Y. 2006). As set forth below, because Plaintiff has established good cause under both Rule 16 and Rule 15, the Court should grant her motion to amend.

## POINT I
### PLAINTIFF HAS SHOWN GOOD CAUSE UNDER RULE 16

It is well settled that under Rule 16, where a motion to amend is made after the deadline in the scheduling order has passed, a finding of good cause depends on the diligence of the moving party. Bridgeport Music Inc. v. UMG Recordings, Inc., 2008 WL 113672 at *3 (S.D.N.Y. Jan. 10, 2008). "In other words, the movant must show that the deadlines [could] not be reasonably met despite its diligence." Id.

In this case, the reason for the delay in moving to amend is simple: Plaintiff was not aware of Defendants' justification for denying her employment in Fall 2012 until Mr. Opiekun testified on October 25, 2013. Plaintiff served interrogatories on February 11, 2013. (Pl. Ex. M.) In particular, the interrogatories sought the basis for Defendants' decision denying her employment at the District, and the identities of all individuals who were involved in that decision. (Pl. Ex. M at p. 8.) Defendants did not serve Responses to Plaintiff's Interrogatories until June 19, 2013, following two deficiency letters sent by Plaintiff's counsel, threatening judicial intervention. (Pl. Ex. C; D; E.) Because the deadline for amending the pleadings pursuant to the Scheduling Order was April 5, 2013, Plaintiff was not privy to the information which now forms the basis for her requested amendment until after the deadline expired.

Moreover, Defendants' response to the essential interrogatory did not identify the basis for denying her employment. Rather, Defendants' simply stated that Superintendent Opiekun "did not make a recommendation to the Board." (Pl. Ex. E at p. 7.) As such, in order to obtain the reasons why Mr. Opiekun made his decision, Plaintiff sent a Notice of Deposition for Mr. Opiekun for September 24, 2013. (Pl. Ex. H.) However, due to the last-minute production of more than 330 documents by Defendants just days prior to Plaintiff's scheduled deposition, Ms. Joinnides's deposition was adjourned to September 24, 2013 – the date that Mr. Opiekun's deposition had originally been scheduled by Plaintiff. (Pl. Ex. H.) Thereafter, counsel for Plaintiff made several good faith attempts to schedule Mr. Opiekun's deposition, proposing numerous dates during the last week of September 2013, and during the first three weeks of October 2013. (Pl. Ex. I.) Due to scheduling conflicts on Defendants' end, however, Mr. Opiekun's deposition could not be taken prior to October 25, 2013 – five days before fact discovery concluded – while counsel for Plaintiff was in the midst of a federal trial before Hon. Judge Spatt.

Upon deposing Mr. Opiekun, Plaintiff learned, for the first time, the justification for Defendants' decision regarding her employment. However, the reasons provided by Defendants – Plaintiff's participation on the CBAC – constitute an additional basis for her First Amendment retaliation claim. Clearly, Plaintiff's activity on the CBAC, wherein she openly criticized the financial policies and budgetary decisions of the Board and the District constitutes "protected activity" under the First Amendment. Pickering v. Board of Ed. of Township High School Dist., 391 U.S. 563 (1968). Indeed, Plaintiff's activity on the CBAC constituted precisely the same type of protected activity that formed the basis of the First Amendment claim that was asserted in the original Complaint.

Should Defendants assert that Plaintiff's motion should be denied because she had the requisite "knowledge" of such activity when she initially commenced the action in November 2012, the argument must be rejected. Although Plaintiff had knowledge that she served on the CBAC from November 2011 to June 2012, she certainly was unaware that her participation would have formed the basis of any employment decision in the Fall of 2012. Indeed, at Plaintiff's deposition, she testified as follows:

> Q:    Was anybody from the Board of Education present at these meetings?
>
> A:    Yes, and Dr. Pombonyo.
>
> Q:    Did anybody from the Board of Education accuse you of acting erratically or being unstable?
>
> A:    Not to my face, they didn't.
>
> Q:    Did you hear from Joe Pepe, or any other committee members that they thought you were acting –
>
> A:    Not that I'm aware of.
>
> Q:    Did anybody accuse you of being unprofessional during these meetings?
>
> A:    No, no. Actually, Mr. Pepe said I was the lead voice of the committee. I guess quite the contrary.[7]

(Pl. Ex. J at p. 206-07.) As such, prior to Mr. Opiekun's deposition testimony, Plaintiff would simply have no way of knowing that her protected activity as a member of the CBAC could have formed the basis of Defendants' decision to deny her employment, and therefore, had no reasonable basis for including her CBAC activity as part of her original Complaint. Rather, at her

---

[7] Indeed, CBAC Chairperson stated to Plaintiff, in May 2012, via email, "I think Patsy that you were the lead voice on this Committee. That is quite an accomplishment for you to have achieved since you missed so many meetings because of your health issues. Once you were feeling a little better you participate by telephone and at each meeting you made very significant contributions. You started to really participate when we were getting down to the time to make recommendations. . . I do not want to lose you as a future member so please stay with this. You and Jim have been very instrumental in making contributions and shedding light on different issues. You have a good following who have confided in you and that is important to keep the line of communication open. . ." (Pl. Ex. N)

meeting with Mr. Opiekun, she was told that that "every school has an institutional memory, and this Board of Education seems to have a long institutional memory." (Pl. Ex. J at p. 236.) Given Defendants' reaction to Plaintiff's opposition to the November 2010 bond referendum, wherein: (1) Plaintiff was removed from the substitute teacher list; and (2) Plaintiff's husband was publicly attacked by the Board in a letter published by *The Floral Park Dispatch*, Plaintiff reasonably interpreted the "long institutional memory" comment to refer to her opposition to the bond. (Pl. Ex. A at ¶¶ 49-53; 65-69.).

In short, despite Plaintiff's diligence, she could not have moved to amend her complaint prior to deadline for amendment expiring because the basis for her amendment is the information she obtained during discovery. It is well settled that "discovery often justifies a subsequent amendment to the complaint." Assam v. Deer Park Spring Water, Inc., 163 F.R.D. 400, 406 (E.D.N.Y. 1995). Under such circumstances, courts in this circuit have regularly granted motions to amend under Rule 16. See Friedl v. City of New York, 210 F.3d 79, 87 (2d Cir. 2000) (granting plaintiff's motion to amend under Rule 16 after deadline passed where "plaintiff moved to amend his complaint based on information acquired during depositions and other discovery," noting that "there has been no showing of either undue delay, given that the amendment was proposed only after discovery revealed additional relevant facts. . ."); Samad Bros., Inc. v. Bokara Rug Co., Inc., 2010 WL 2835754, at *3 (S.D.N.Y. June 30, 2010) (granting plaintiff's motion to amend under Rule 16 following expiration of deadline in scheduling order where plaintiff received additional relevant information during discovery.); Schiller v. City of New York, 2009 WL 497580, at *3-4 (S.D.N.Y. Feb. 27, 2009) (granting plaintiffs' motion under to amend under Rule 16, two years after deadline in scheduling order expired, finding that there was no bad faith or prejudice.); Bridgeport Music Inc. v. UMG Recordings, Inc., 2008 WL

113672 at *3 (S.D.N.Y. Jan. 10, 2008) (granting motion to amend under Rule 16 after discovery revealed additional information forming basis for amendment.); Securities and Exchange Commission v. PCI Telecommunications, Inc., 207 F.R.D. 32, 34 (S.D.N.Y. 2002) (granting plaintiff's motion to amend under Rule 16 following four month delay after plaintiff obtained discovery supporting basis for amendment.); Zomba Recording Corp. v. MP3.Com, Inc., 2001 WL 770926 at *1 (S.D.N.Y. July 10, 2001) (granting plaintiffs' motion to amend under Rule 16, despite expiration of deadline in scheduling order and trial date scheduled three months from date of motion.); Robinson v. Town of Colonie, 1993 WL 191166 at *3-4 (N.D.N.Y. 1993) (granting plaintiff's motion to amend under Rule 16, after deadline in scheduling order passed, finding that plaintiff did not have reason to seek leave to amend scheduling order until depositions were taken of Town officials, and the deadline had passed, noting the "strong policy" to "facilitate proper disposition on the merits.")

Indeed, courts have also permitted amendment of pleadings under Rule 16 following the completion of discovery, where the information forming the basis of the amendment was obtained in discovery. See Quattrone v. Erie 2 Chautauqua-Cattaraugus Bd. of Co-op. Educational Services, 2011 WL 294496, at *4 (W.D.N.Y. 2011) (granting motion to amend following completion of discovery where deposition testimony revealed facts supporting additional claims.); Lincoln v. Potter, 418 F.Supp.2d 443, 454-55 (S.D.N.Y. 2006) (granting plaintiff's motion to amend under Rule 16, after deadline in scheduling order passed and discovery was closed.); Hampton Bays Connections, Inc. v. Duffy, 212 F.R.D. 119 (E.D.N.Y. 2003) (granting motion to amend complaint under Rule 16 despite completion of discovery where plaintiff obtained information supporting amendment in discovery.); Cemar Tekstil Ithalat

San ve Tic. A.S. v. Joinpac, Inc., 1993 WL 126890 (S.D.N.Y. April 16, 1993) (granting motion to amend following completion of discovery.)

Because the information which forms the basis for Plaintiff's amendment was obtained in the final days of discovery, she has shown the requisite "good cause" under Rule 16, demonstrating that she could not have moved to amend prior to the deadline set forth in the scheduling order. Therefore, because Rule 16 is satisfied, the Court should next determine whether amendment should be permitted under Rule 15.

**POINT II**
**THE COURT SHOULD GRANT PLAINTIFF'S MOTION UNDER RULE 15 BECAUSE DEFENDANTS ARE UNABLE TO SHOW PREJUDICE, BAD FAITH, OR FUTILITY**

Under Federal Rule 15(a), leave to amend the party's pleading "shall be freely given as justice so requires." Fed. R. Civ. P. 15(a). The Second Circuit has held that a Rule 15(a) motion should be denied only because of bad faith, undue delay, futility, and prejudice to the non-moving party. Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 603-04 (2d Cir. 2005). For the reasons set forth below, Plaintiff's motion to amend should be granted.

**A.     The Proposed Amendment is Made in Good Faith.**

"Few courts have denied leave to amend on the basis of bad faith." Oneida Indian Nation of New York State v. County of Oneida, 199 F.R.D. 61, 80 (N.D.N.Y. 2000). Nevertheless, as set forth in Point I, *supra*, Plaintiff is making the current motion to amend in good faith, because the critical information providing the basis for the amendment was not known until the deposition of Mr. Opiekun was taken on October 25, 2013.

**B.      Allowing the Amendment Would Not Cause Undue Delay or Unfairly Prejudice Defendants.**

The Second Circuit has "held repeatedly that 'mere delay' is not, of itself, sufficient to justify denial of a Rule 15(a) motion." Parker v. Colombia Pictures Industries, 204 F.3d 326, 339 (2d Cir. 2000). Nevertheless, Plaintiff first requested permission to amend the complaint on January 28, 2014, approximately 14 months after the suit was commenced. (D.E. #22.) Courts in this Circuit have permitted amendment of pleadings in cases with far greater temporal gaps. See Rachman Bag Co. v. Liberty Mut. Ins. Co., 46 F.3d 230, 235 (2d Cir. 1995) (allowing amendment four years after complaint was filed.); State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d 843, 845-46 (2d Cir. 1981) (allowing amendment after three year interval.); Middle Atl. Utils. Co. v. S.M.W. Dev. Corp, 392 F.2d 380, 383 (2d Cir. 1968) (allowing amendment after three year interval and notice of trial readiness.); Schiller v. City of New York, 2009 WL 497580, at *3-4 (S.D.N.Y. Feb. 27, 2009) (granting plaintiffs' motion under three years after action commenced.); Zeigan v. Blue Cross and Blue Shield, 607 F.Supp. 1434, 1438 (S.D.N.Y. 1985) (allowing amendment after three year interval, finding no prejudice or bad faith.); Catapano v. Western Airlines, Inc., 105 F.R.D. 621, 623 (E.D.N.Y. 1985) (granting motion to amend, noting "[a]lthough plaintiffs moved to amend more than one year after filing their complaint, this alone does not constitute undue delay."); Green v. Wolf Corp., 50 F.R.D. 220, 223 (S.D.N.Y. 1970) (allowing amendment almost four years after suit was commenced, where plaintiff was aware of the facts asserted in amended complaint from outset of the case, finding no prejudice or bad faith.)

Moreover, Plaintiff made the request to amend just three months after Mr. Opiekun's deposition in October 2013, wherein he provided the information forming the basis for the proposed amendment. Such a delay was not excessive. See Richardson v. Greenshields

Securities, Inc. v. Lau, 825 F.2d 647, 653 (2d Cir. 1987) ("parties ... have been permitted to amend their pleadings long after they acquired the facts necessary to support those claims."); Securities and Exchange Commission v. PCI Telecommunications, Inc., 207 F.R.D. 32, 34 (S.D.N.Y. 2002) (granting plaintiff's motion to amend following four month delay after plaintiff obtained discovery supporting basis for amendment.); Assam v. Deer Park Spring Water, Inc., 163 F.R.D. 400, 406 (E.D.N.Y. 1995) (granting motion to a amend, noting "while the plaintiffs delayed for three months, such delay did not appear excessive since the facts as first brought to plaintiff's attention were drawn from the depositions of defendant's witness taken only three months before.")

Moreover, permitting the amendment would not in any way prejudice Defendants. As the Second Circuit has made clear, "undue prejudice arises when an amendment comes on the eve of trial and would result in new problems of proof." Ruotolo v. City of New York, 514 F.3d 184, 192 (2d Cir. 2008). Here, no additional discovery need be conducted, as all of the necessary facts are in the record for proper disposition of Plaintiff's claim. Significantly, Plaintiff is not seeking to assert a new cause of action, or change legal theories. Rather, Plaintiff is simply seeking to supplement her original First Amendment retaliation claim with additional facts that were obtained in discovery. Notably, the type of protected activity Plaintiff engaged in during her time serving on the CBAC is precisely the same type of protected activity which formed the basis of her original claim as asserted in the Complaint – speech regarding the District's mismanagement of its financial resources, which, of course, are taxpayer dollars. Indeed, "federal courts consistently grant motions to amend where it appears that new facts and allegations were developed during discovery, are closely related to the original claim, and are foreshadowed in earlier pleadings." Xpressions Footwear Corp. v. Peters, 1995 WL 758761, at *2 (S.D.N.Y. Dec.

22, 1995); see also Hanlin v. Mitchelson, 794 F.2d 834, 841 (2d Cir.1986) (granting leave to amend after discovery had been completed and a motion for summary judgment filed because "the new claims [were] merely variations on the original theme of malpractice, arising from the same set of operative facts as the original complaint"); State Farm Mut. Auto Ins. Co. v. CPT Medical Services, 246 F.R.D. 143, 149 (E.D.N.Y. 2007) (granting motion to amend where plaintiff sought to add new claims which were "intertwined" with the claims already asserted, noting that "all claims at issue share a common theme."); Alfadda v. Fenn, 1993 WL 307757, at *1 (S.D.N.Y. Aug. 6, 1993) (granting motion to amend, noting that "there is no prejudice to a defendant where new claims are merely variations on the original theme."); Rivera v. Dyett, 1993 WL 54652, at *4 (S.D.N.Y. 1993) (same).

Further, even if Defendants assert that additional discovery must be conducted, such additional discovery would not constitute undue prejudice. See Bridgeport Music Inc. v. UMG Recordings, Inc., 2008 WL 113672, at *3 (S.D.N.Y. Jan. 10, 2008) ("it is well settled that allegations that an amendment will require the expenditure of some additional time, effort, or money do not constitute undue prejudice."); Cummings-Fowler v. Suffolk County Community College, 282 F.R.D. 292, 297 (E.D.N.Y. 2012) ("[T]he adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading.") (quoting United States v. Continental Ill. Nat'l Bank & Trust of Chicago, 889 F.2d 1248, 1255 (2d Cir. 1989)); S.S. Silberblatt, Inc. v. East Harlem Pilot Block-Bldg. 1 Hous. Dev. Fund. Co., Inc., 608 F.2d 28, 43 (2d Cir. 1979) ("The adverse party's burden of undertaking discovery does not outweigh the Federal Rules' policy of liberally granting these amendments, thereby enabling the parties to adjudicate disputes on their merits.") However, as already stated, if the Court was

to grant Plaintiff's motion to amend, no additional discovery need even be conducted. As such, there would be no undue delay or prejudice to Defendant.

**C.     Allowing the Amendment Would Not be Futile.**

It is well settled that in order to establish a claim for First Amendment retaliation, an individual must show that: (1) her speech was constitutionally protected; (2) she suffered an adverse employment action; and (3) a connection between the activity and the adverse action, such that her speech could have been a motivating factor in defendant's adverse action. Zelnik v. Fashion Institute of Technology, 464 F.3d 217, 225 (2d Cir. 2006). Here, Plaintiff's CBAC activity, wherein she criticized the Board and the District regarding its budgetary policies and mismanagement of taxpayer funds, is clearly activity that is protected by the First Amendment. See Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999) ("speech on any matter of political, social, or other concern to the community is protected by the First Amendment."); Bieluch v. Sullivan, 999 F.2d 666, 671 (2d Cir. 1993) (tax expenditures and budgets are "matters of utmost public concern.") As such, because Plaintiff clearly engaged in activity protected by the First Amendment, by speaking out on matters of public concern as a citizen, she has satisfied the first element of the requisite analysis.

Additionally, Plaintiff suffered an adverse employment action. Given that in this case, Plaintiff actually worked for the District in the Fall of 2012 prior to Defendant's decision not to permanently add her to the substitute list, the adverse action suffered here can be described either as termination, or refusal to hire. Nevertheless, it is well settled that both actions constitute adverse employment actions in the First Amendment retaliation context. Kaluczky v. City of White Plains, 57 F.3d 202, 209 (2d Cir. 1995) ("Adverse employment action includes discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand.")

Finally, the facts set forth in Plaintiff's proposed Amended Complaint demonstrate a causal connection between her protected activity and the adverse employment action. Generally, a plaintiff can establish the causal link either: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Gilford v. City of New York, 2004 WL 1574695, at *7 (S.D.N.Y. 2004). Here, Plaintiff engaged in protected activity as member of the CBAC until June 2012. (Pl. Ex. B at ¶ 62.) The decision to deny Plaintiff employment at the District was made approximately four months later, in October 2012. (Pl. Ex. B at ¶¶ 62; 74.) This temporal proximity alone is sufficient for a finding of retaliation. See Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009) (causal connection plausible despite six month gap between protected activity and retaliation.); Raniola v. Bratton, 243 F.3d 610, 624 (2d Cir. 2001) (causal connection where adverse action occurred more than 14 months following protected activity.); Leung v. New York University, 2010 WL 1372541, at *6 (S.D.N.Y. March 29, 2010) (causal connection plausible despite ten month gap.); Sassone v. Quartararo, 598 F.Supp.2d 459, 467 (S.D.N.Y. 2009) (causal connection despite six month gap.); Wallace v. Suffolk County Police Dept., 393 F.Supp 251, 262 (E.D.N.Y. 2005) (causal connection despite three year gap.); Bernhardt v. Interbank of New York, 18 F.Supp.2d 218, 226 (E.D.N.Y. 1998) (causation possible despite eleven month gap.)

More importantly, the statements made by Mr. Opiekun to Plaintiff at their October 2012 meeting constitute *direct evidence* of retaliatory intent. It is well established that "actions or remarks made by decisionmakers that could be viewed as reflecting discriminatory animus' may give rise to an inference of discriminatory motive." Gregory v. Daly, 243 F.3d 687, 697 (2d Cir. 2001). Here, Mr. Opiekun told Plaintiff that "every school has an institutional memory, and this

Board of Education seems to have a long institutional memory." (Pl. Ex. B at ¶ 70; Pl. Ex. J at p. 236.) Plaintiff also testified that Mr. Opiekun told her that the Board was afraid that she would "blur the line" between taxpayer/homeowner and employee, and that the Board was concerned that if she was to "see something wrong, you will talk about it." (Pl. Ex. B at ¶ 70; Pl. Ex. J at p. 234.) Moreover, at his deposition, Mr. Opiekun testified that his decision to not recommend Plaintiff to be permanently placed on the substitute list for 2012-2013 school year was exclusively based upon the information provided to him by members of the Board of Education, and that the decision solely related to her CBAC activity. (Pl. Ex. K at p. 91.) Notably, Mr. Opiekun testified that Board members told him that during her time on the CBAC, she was "very critical" of the Board of Education. (Pl. Ex. K at p. 51.) Mr. Opiekun also confirmed that at his meeting with Plaintiff he referenced the District's "institutional memory," which he acknowledged "shape decisions about people," and also spoke about resident employees "blurring lines." (Id. at pp. 66-67, 71.)

Defendants will likely argue that it was not the nature of Plaintiff's protected speech as a member of the CBAC, but rather her "disruptive behavior" at meetings and in email communications, which led to its decision to deny her employment. While the content of Plaintiff's allegedly "disruptive" emails to other CBAC members will clearly demonstrate that she was expressing strong opinions regarding the District's budgetary proposals – matters that are clearly of public concern – Defendants will have a full and fair opportunity to make such arguments in a motion for summary judgment. However, here: (1) the short temporal proximity between her protected activity and the adverse action; and (2) the statements made by Mr. Opiekun reflecting Defendants' clear retaliatory animus demonstrate that Plaintiff's proposed Amended Complaint sufficiently establishes the requisite elements for a viable claim of First

Amendment retaliation based on her CBAC activity, *in addition* to the protected activity she engaged in when she opposed the $5,000,000 bond in the Fall of 2010.

As such, Defendants are unable to show futility, undue delay, or prejudice. Finally, it should be noted that "the standard governing motions to amend is a 'permissive' one that is informed by a 'strong preference for resolving disputes on the merits.'" BNP Paribas Mortg. Corp. v. Bank of America, N.A., 866 F.Supp.2d 257, 263 (S.D.N.Y. 2012) (quoting Williams v. Citigroup Inc., 659 F.3d 208, 212-13 (2d Cir. 2011)); see also Simon v. City of New York, 2011 WL 317975, at *3 (E.D.N.Y. Jan. 3, 2011) ("federal courts prefer to resolve disputes on their merits rather than technical deficiencies in the pleadings or motion papers.") Under the circumstances, it would be illogical, and a grievous waste of judicial resources to require Plaintiff to file a new action to seek redress for the retaliation she was subjected to as a result of her CBAC protected activity, given that the information forming the basis of her claim was obtained during discovery in this case, the principal actors are the same, the protected activity engaged in is precisely the same type of activity which formed the basis of the First Amendment claim contained in her original Complaint, and permitting amendment would not delay the resolution of this case. As such, Plaintiff's motion to amend should be granted.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion to Amend the Complaint should be granted in its entirety, and Plaintiff should be awarded such other relief that the Court deems just and proper.

Dated: Garden City, NY
      April 21, 2014

Joshua Beldner