**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
PATSY JOINNIDES,

                              Plaintiff,

              - against -

FLORAL PARK-BELLEROSE UNION
SCHOOL DISTRICT, and BOARD OF
EDUCATION OF THE FLORAL
PARK-BELLEROSE UNION FREE
SCHOOL DISTRICT,

                              Defendants.
--------------------------------------------------------X

                                                    **MEMORANDUM**
                                                    **AND ORDER**

                                                    CV 12-5682 (JS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.      PRELIMINARY STATEMENT

        Plaintiff Patsy Joinnides ("Plaintiff") brings this civil rights action, pursuant to 42 U.S.C.

§ 1983, against Defendants Floral Park-Bellerose Union Free School District ("the District") and

the Board of Education of the Floral Park-Bellerose Union Free School District ("the Board")

(collectively, "Defendants") alleging violations of her constitutional rights to freedom of speech

and equal protection.  Plaintiff, a former substitute school teacher for the District, claims that

Defendants (1) retaliated against her on the basis of her speech as a private citizen on a matter of

public concern by denying her employment as a substitute teacher; and (2) discriminated against

her on the basis of her age by failing to hire her for a one-year teaching position.  With regard to

Plaintiff's First Amendment retaliation claim, the Complaint alleges that Defendants removed

Plaintiff's name from the list of available substitute teachers in November 2010 and again in

October 2012 because Plaintiff, speaking as a private citizen, opposed a November 2010 proposal

by the Board to approve a $5,000,000 bond to fund capital improvements in the District. *See generally* Compl. ¶¶ 4-5 [DE 1].

Before the Court is Plaintiff's motion to amend her Complaint, pursuant to Fed. R. Civ. P. 15 and 16, to add new factual allegations related to her First Amendment retaliation claim. *See* Plaintiff's Notice of Motion [DE 26]. Plaintiff maintains that, as alleged in her original Complaint, Defendants removed her name from the substitute teacher list in November 2010 and October 2012 because she expressed opposition to the November 2010 bond proposal. However, Plaintiff now seeks to add further allegations that Defendants had an additional retaliatory basis for denying her employment in October 2012. *See* Plaintiff's Memorandum of Law in Support of Her Motion to Amend the Complaint ("Pl.'s Mem.") at 2 [DE 28]. Specifically, Plaintiff claims that Defendants' decision not to hire her as a substitute teacher in October 2012 was motivated by the strong opinions and criticisms of Defendants she expressed as a member of the Citizens Budget Advisory Committee ("CBAC") between October 2011 and June 2012. *See id.* at 1. Defendants oppose the motion, arguing that Plaintiff has not shown good cause to amend her Complaint and, in any event, her proposed amendments would be futile. *See* Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Amend the Complaint ("Defs.' Opp.") at 1-2 [DE 30].

For the reasons set forth below, Plaintiff's motion to amend the Complaint is GRANTED.

## II.    BACKGROUND

### A.    The Complaint

The following allegations concern Plaintiff's First Amendment retaliation claim at issue on this motion. Plaintiff worked for the District from 1996 to 2008 as a Title I Reading Assistant and Special Education Assistant at John Lewis Childs School ("John Lewis"). Compl. ¶¶ 19-26. In June 2008, Plaintiff voluntarily left the District to fulfill her student teaching requirements. *Id.*

¶¶ 26-29.  Plaintiff received her New York State Teaching Certification and was rehired by the

District in September 2009 as a Permanent Substitute Teacher at John Lewis.  *Id.* ¶ 30.  Plaintiff

worked as a "full-time leave replacement" while two teachers were on maternity leave from

January 2010 to May 2010, *id.* ¶¶ 31-32, and continued to work as a per-diem Substitute in

September and October 2010.  *Id.* ¶ 38.

    In the fall of 2010, the Board submitted a funding proposal for capital improvements within

the District for a referendum vote by Floral Park residents.  *Id.* ¶ 39.  The majority of the proposed

improvements related to energy-related projects, including replacement of the District's boilers,

windows, and lighting systems.  *Id.*  The Board was in favor of funding the capital improvements

through the issuance of a $5,000,000 bond.  *Id.* ¶ 40.

    At a November 8, 2010 Board meeting, Plaintiff and her husband, Jim Joinnides ("Mr.

Joinnides"), spoke out against the bond proposal.  *See id.* ¶¶ 41-44.  The Complaint states that

Plaintiff spoke "[a]s a taxpayer in the community . . . [who] was concerned that the bond proposal

would unnecessarily pass costs along to the taxpayers, wherein there were cost-neutral alternatives

that were rejected by the Board."  *Id.* ¶ 43.  Mr. Joinnides suggested at the meeting that the Board

consider utilizing an Energy Savings Company ("ESCO") to address the District's capital

improvement needs through Energy Performance Contracts ("EPCs").  *Id.* ¶ 41.  Plaintiff thereafter

presented the Board and the audience with news excerpts describing how "many other school

districts on Long Island had utilized ESCOs, and had realized tremendous cost savings to the

taxpayers in those communities."  *Id.* ¶ 43.  Plaintiff also told meeting attendees "that Mr. Peter

Novak of the New York State Comptroller's Office would welcome questions and phone calls

from the community regarding the financial operations of the District."  *Id.* ¶ 44.  The Complaint

alleges that, after Plaintiff mentioned Mr. Novak, "Superintendent Lynn Pombonyo

[Dr. Pombonyo] became visibly angered, and yelled that she too had Mr. Novak's phone number, and yelled that she too would be speaking with Mr. Novak." *Id.* ¶ 45.

On November 12, 2010, the *Floral Park Dispatch*, a community newspaper, published an "open letter" written by Plaintiff, in which she "re-iterated her concerns regarding the bond proposal, and urged Floral Park residents to vote down the bond referendum." *Id.* ¶ 46. In her letter, Plaintiff stated:

> Our school board acts upon the assumption that we, the taxpayers, the ones they are accountable to, will continue to do their bidding, unquestioned. Speaking of questions, a resident's question about the reasons why the district did not entertain the possibility of entering into an EPC was never answered . . . . It is my opinion that question could not be answered because the option was never explored. I urge you to vote down this bond referendum and demand that the board go back to the drawing board and do their homework, shame on them.

*Id.* On November 16, 2010, Floral Park residents voted down the bond proposal. *Id.* ¶ 47.

The Complaint alleges that, following the November 8, 2010 Board meeting, "Plaintiff's name was removed from the District's substitute list" and she was "effectively prevented from working at the District." *Id.* ¶ 53. The Complaint asserts, "[u]pon information and belief," that Dr. Pombonyo directed that Plaintiff be "permanently" removed from the District's list. *Id.*

In July 2012, Dr. Pombonyo retired from the District and James Opiekun became Superintendent. *Id.* ¶ 58. Around that time, Plaintiff, who had recently recovered from bladder cancer, *see id.* ¶¶ 54-55, decided she wanted to do substitute teaching again at John Lewis. *Id.* ¶ 59. Plaintiff contacted Superintendent Opiekun's office in September 2012 to inquire about substitute positions and was informed that, because she had been taken off the substitute list, she would need to re-apply through the principal at John Lewis. *Id.* ¶ 60. Dr. Margaret McGlynn, then the Principal of John Lewis, forwarded her recommendation in support of Plaintiff's application, as well as three additional letters of recommendation, to Superintendent Opiekun's office. *Id.* ¶ 61.

Plaintiff was told that she could begin substitute teaching on September 19, 2012, and she was called to substitute at John Lewis on four occasions between September 19 and October 4, 2012. *Id.* ¶ 62.

On October 15, 2012, Plaintiff went to Superintendent Opiekun's office to pick up her paycheck and was asked to meet with Superintendent Opiekun. *Id.* ¶ 64. During the meeting held the following day, Superintendent Opiekun told Plaintiff that she "could no longer work for the District as a substitute teacher." *Id.* ¶ 65. According to the Complaint, Superintendent Opiekun "stated that the Board of Education 'had a long institutional memory,' and that the Board was 'afraid that [Plaintiff] will blur the lines between homeowner/taxpayer and an employee.'" *Id.* Superintendent Opiekun "further stated that employees of the District 'need to be good will ambassadors for the District.'" *Id.* At the end of the meeting, Superintendent Opiekun told Plaintiff that, because "he had heard nothing but praise regarding her work" from Principal McGlynn and other District administrators, he would "go back to the Board to seek approval" for Plaintiff's employment. *Id.* ¶ 66. However, on October 25, 2012, Superintendent Opiekun informed Plaintiff by email "that she would not be added to the substitute teacher list, and that she could therefore not work in the District." *Id.* ¶ 68.

Based on the foregoing allegations, the Complaint asserts that Defendants retaliated against Plaintiff "for speaking out as a community member and taxpayer on matters of public concern" by removing Plaintiff from the substitute list in 2010 and 2012. *Id.* ¶ 69. The Complaint asserts a Section 1983 claim against Defendants based on their alleged violation of Plaintiff's First Amendment right to freedom of speech. *Id.* The Complaint also asserts that Defendants violated Plaintiff's rights under Article I, § 8 of the New York State Constitution. *Id.*

**B.      Relevant Procedural History**

Plaintiff filed her Complaint on November 16, 2012.  DE 1.  At the Court's January 9, 2013

Initial Conference, the Court entered a Case Management and Scheduling Order ("CMSO").

DE 10 at 1.  In that CMSO, the parties were given a deadline of April 5, 2013 to make a formal

motion under the Federal Rules to amend the pleadings.  *Id.*  The deadline for fact discovery was

set at July 1, 2013, *id.*, though the Court later extended that deadline to September 30, 2013.  DE

17.

**1.      *Paper Discovery***

On February 11, 2013, Plaintiff served her First Combined Discovery Demands upon

Defendants.  *See* Decl. of Joshua Beldner in Supp. of Pl.'s Mot. to Amend Compl. ("Beldner

Decl.") ¶ 5 [DE 27].  On April 30, 2013, Plaintiff produced documents to Defendants which

included Plaintiff's letter of resignation from the CBAC, dated June 20, 2012.  *See* Defs.' Ex. B

attached to the Decl. of Michael A. Miranda in Opp. to Pl.'s Mot. to Amend the Compl. ("Miranda

Decl.") [DE 29-2].  On May 20, 2013, Defendants disclosed additional documents concerning

Plaintiff's activity at CBAC, including emails Plaintiff sent to fellow CBAC members, some of

whom were also members of the Board.  *See* Defs.' Ex. C attached to Miranda Decl. [DE 29-3].

On June 19, 2013, Defendants served their Responses to Plaintiff's Interrogatories.  *See*

Defs.' Resp. to Pl.'s First Set of Interrogatories, attached at Ex. E to Beldner Decl. [DE 27-5].

Defendants responded to Plaintiff's Interrogatory No. 15 as follows:

> 15.      Identify all individuals who were involved in the
> decision to deny Plaintiff's application to the District's substitute list
> in 2012, and provide the basis for that decision.
>
> **<u>RESPONSE</u>**: Defendants object to this interrogatory on the grounds
> that it is vague, ambiguous, and overbroad.  Notwithstanding, and
> without waiving or limiting said objections, Dr. Opiekun did not make

a recommendation to the Board to place plaintiff on the 2012 substitute list.

*Id.* at ¶ 15.

On August 5, 2013, the Court met with the parties for a Discovery Status Conference. *See* DE 17. The Court noted that "[a]pparently, no depositions ha[d] been taken in the intervening six months since paper discovery was completed" and that Defendants attributed this delay to the departure of their prior counsel. *Id.* ¶ 1. The Court put a Final Scheduling Order in place, which set the deadline for the completion of fact discovery at September 30, 2013. *Id.* ¶ 2.

On September 20, 2013, just prior to Plaintiff's deposition, Defendants turned over an additional 331 documents to Plaintiff. *See* Defs.' Ex. D attached to Miranda Decl [DE 29-4]. Included in that production were emails Plaintiff sent to the CBAC chairman, Joe Pepe, while Plaintiff was still serving on CBAC. *See generally id.* In several emails to Pepe, Plaintiff used offensive language to describe other CBAC members, Board members, and the Board itself. *See id.* at 649, 654, 686, 782. Plaintiff also told to Pepe that she has a "personal vendetta" against the Board because of the "slanderous public comments" the Board made about Plaintiff's husband. *Id.* at 872.

### 2. *Depositions*

Plaintiff was deposed on September 24, 2013. *See* Dep. Tr. of Patsy Joinnides ("Pl. Dep. Tr."), attached as Ex. E to the Miranda Decl. [DE 29-5]. Plaintiff primarily testified that, as alleged in her Complaint, she believed Defendants denied her employment in the District because of the opposition she and her husband voiced against the District's bond proposal in November 2010. Pl. Dep. Tr. at 156:14-157:20. However, Plaintiff also stated that she believed her "criticism of the Board" while she was a member of CBAC played a role in the District's decision

not to place her on the substitute teacher list in October 2012. *See id.* at 293:10. Specifically,

Plaintiff testified:

> A.      I was very candid even from the moment of my interview [for CBAC] and even discussed the fact Dr. Pombonyo had a problem with trust in the community. There was a general sense of lack of transparency during her administration.
>
> I was always honest with the opinions that I brought to them from the community. I didn't try to couch anything because I was charged with public trust and representing what the community said to me and some of the things may not have made the Board happy, it wasn't always positive. There was a lot of negativity.

*Id.* at 253:5-23. Plaintiff also testified about her participation on the CBAC and discussed her

emails to Pepe which Defendants produced just prior to her deposition. *See generally id.* at 190-

210.

On September 26, 2013, Defendants made an application to the Court, with Plaintiff's

consent, for a 30-day extension of the September 30, 2013 deadline to complete fact discovery.

DE 18. Defendants asserted that, although Plaintiff had been deposed and the deposition of the

District's former Superintendent had been scheduled for September 27, 2013, "[a]dditional time is

necessary however to hold the depositions of the District's remaining witnesses." *Id.* Defendants

stated that "[t]he delay in completing all fact depositions by the September 30th deadline was

primarily due to supplemental discovery recently uncovered by our office and disclosed to

plaintiff's counsel." *Id.* The Court granted Defendant's request to extend the fact discovery

deadline to October 30, 2013, but stated that "no further extensions will be granted." Elec. Order,

Sept. 27, 2013.

Superintendent Opiekun was deposed on October 25, 2013. *See* Dep. Tr. of James N.

Opiekun ("Opiekun Dep. Tr."), attached as Ex. F to Miranda Decl. [DE 29-6]. Opiekun testified

that, prior to meeting with Plaintiff in October 2012, he was approached by two Board members

who expressed "some issues" with Plaintiff and the fact that Opiekun had permitted her to substitute teach in September 2012. *See id.* at 38:12. These Board members informed Opiekun that, during her time on the CBAC, Plaintiff was "very critical" of the Board. *Id.* at 51:10-12. According to Opiekun, the Board members told him that "the processes that the [B]oard was using to build the budget were under constant criticism by [Plaintiff] at the committee level. By default then, that would be a criticism of the Board." *Id.* at 51: 20-24. Specifically, Board president Laura Ferone informed Opiekun that Plaintiff had recently served on the CBAC "and it did not go well" because "[Plaintiff's] presence [on the CBAC] was very disruptive . . . to the point where other members of the committee were talking about resigning." *Id.* at 38:15-39:4. Ferrone told Opiekun that, as a consequence, Plaintiff's "candidacy" for placement on the substitute teacher list would need to be "discuss[ed]" with the Board. *Id.* at 39:22-23.

Opiekun further testified that, prior to meeting with Plaintiff in October 2012, he attended a meeting with the Board. *Id.* at 63:2-11. During the Board meeting, Opiekun told the Board that it had been "brought to [his] attention that there may be some issues about [Plaintiff] working for [the District] as a substitute" and as a consequence, he would not put Plaintiff's name on the substitute list. *Id.* Opiekun also told the Board that they "need[ed] to continue a discussion about [Plaintiff]." *Id.* at 63:12. The Board agreed to discuss the matter further though, to Opiekun, "it began to come through that there were, in the [B]oard's mind, some significant issues about [Plaintiff's] conduct and behavior." *Id.* at 64:2-7.

Opiekun subsequently met with Plaintiff at his office in October 2012. *See id.* at 64: 8-10. Opiekun told Plaintiff that "[e]very District has an institutional memory," which he acknowledged "can shape decisions about people." *Id.* at 66:7-8; 67:5-6. Opiekun also spoke to Plaintiff about employees "blurring lines," meaning that "when somebody lived in a district as an employee, that

sometimes it was difficult not to blur the line between the different roles that you have as a resident." *Id.* at 69:22-25-70:2-4. At the conclusion of the meeting, Opiekun told Plaintiff that he would discuss "the gist" of their conversation with the Board at the next meeting and that "the door was not closed." *Id.* at 73:10-16.

During the next Board meeting, Opiekun "introduced the topic" of Plaintiff's candidacy for a substitute teacher position. *Id.* at 75:23. Opiekun testified that three Board members spoke against Plaintiff's candidacy based on her recent conduct on the CBAC. *See id.* at 76:13-15; 79:2-80:4. These Board members were concerned, in general, with Plaintiff's "disruptive" behavior as a CBAC member. *Id.* at 80:16-20. In particular, Ferrone told the Board that Plaintiff's conduct on CBAC was "dysfunctional, disruptive and erratic" and that, as a consequence, Ferrone did not believe Plaintiff "should be in front of students." *Id.* at 76:13-24. Ultimately, all five Board members voted not to put Plaintiff on the substitute teacher list. *Id.* at 81:7. Opiekun testified that, based on the information provided by the Board regarding Plaintiff's service on the CBAC, he decided not to recommend Plaintiff's appointment to the substitute teacher list for the 2012-2013 school year. *Id.* at 90:19-91:11.

### 3. *Summary Judgment Motion Practice*

After the close of discovery, the parties commenced summary judgment motion practice.[1]

---

[1] On November 25, 2013, Defendant sought an extension of the deadline to request a pre-motion conference letter with Judge Seybert based on Defendants' delay in receiving transcripts from the depositions of Superintendent Opiekun and another District witness. DE 19. The Court granted Defendants' application and extended the deadline to December 27, 2013. *See* Elec. Order, Nov. 25, 2013. Defendants served their Rule 56.1 Statement of Facts upon Plaintiff on December 20, 2013, and thereafter requested a second extension from the Court of the deadline to seek a pre-motion conference. DE 20. The Court granted an extension until January 22, 2014. Elec. Order, Dec. 23, 2013. Plaintiff served her Rule 56.1 Counterstatement of Facts on January 17, 2014. *See* Beldner Decl. ¶ 41.

On January 22, 2014, Defendants filed a letter with Judge Seybert requesting a pre-motion conference on their forthcoming motion for summary judgment. DE 21. Defendants argued, as relevant to the instant motion, that although Plaintiff's First Amendment retaliation claims had been "predicated solely on speech she made in November 2010 in connection with a District Bond Referendum," Plaintiff now sought to claim, for the first time in opposition to Defendants' summary judgment motion, that her speech as a member of CBAC "also contributed to [the] alleged retaliation." *Id.* at 2. Defendants asserted that "Plaintiff's new post-discovery allegations, raised for the first time in opposition to summary judgment, should not be considered by the Court." *Id.*

On January 28, 2014, Plaintiff filed a letter in opposition to Defendants' pre-motion conference request and urged Judge Seybert to "reject[]" Defendants' claim that "[Plaintiff] is precluded from arguing that her constitutionally protected CBAC activity . . . contributed to Defendants' retaliatory actions." DE 22 at 3 (emphasis omitted). According to Plaintiff, she first learned that her speech as a CBAC member provided grounds for her dismissal from Superintendent Opiekun's October 25, 2013 deposition testimony. *See id.* Plaintiff maintained that she was "not seeking to assert a new claim or cause of action" but to "utilize[e] facts obtained in discovery to amplify and supplement her original First Amendment retaliation claim." *Id.* Plaintiff therefore asserted that she should be permitted to argue that Defendants retaliated against her on the basis of both "(1) her 2010 protected speech; and (2) her 2011-2012 protected speech as a member of the CBAC." *Id.* If, however, the Court was "inclined to agree with Defendants," Plaintiff requested "an opportunity to be heard on this issue, or . . . to file an Amended Complaint to insert her CBAC activity as an additional basis for Defendants' retaliation, as Defendants cannot show bad faith, prejudice, or futility." *Id.*

## C. The Instant Motion to Amend

Judge Seybert held the pre-motion conference to discuss Defendant's anticipated motion for summary judgment on April 4, 2014. DE 23. As a result of that conference, Judge Seybert permitted Plaintiff to move to amend her Complaint and directed that this motion "be filed and decided before any summary judgment motion is filed." DE 25. Judge Seybert also set a briefing schedule on Plaintiff's motion to amend. *See id.* The motion was briefed in accordance with that schedule and filed on ECF on May 22, 2014. *See* DE 26-DE 32. Judge Seybert thereafter referred Plaintiff's motion to amend to this Court pursuant to Fed. R. Civ. P. 72(a) for a decision on the motion. DE 33.

## D. Plaintiff's Proposed Amended Complaint

Plaintiff's proposed Amended Complaint ("PAC") includes factual allegations related to Plaintiff's membership on the CBAC. *See* PAC, attached as Ex. B to Beldner Decl. Specifically, the Amended Complaint contains the following additional allegations:

> 59. In or around October 2011, while she was in the process of undergoing chemotherapy, Plaintiff began serving as a member of the Citizens Budget Advisory Committee ("CBAC"); a committee made up of community residents tasked to assist the District in formulating the budget. Board members and District Administrators, including Superintendent Pombonyo and Assistant Superintendent Michael Fabiano, participated in, and attended CBAC meetings.
>
> 60. During her time on the CBAC, Plaintiff expressed strong opinions regarding the District and the Board of Education, and openly criticized policies that she felt were not in the best interests of community residents, including the consistent overestimation of budget expenditures, and the mismanagement of financial resources. Plaintiff also expressed strong opinions that the District's Administration was 'top heavy,' and that the cost of the Administration's salaries was too high.
>
> 61. Additionally, Plaintiff strongly advocated against fiscal cuts to academic programs in the District, when there were other viable options for savings. Several of Plaintiff's positions regarding the

budget were unpopular with the Board, and the District's Administration. Although Plaintiff was critical of the District, and disagreed with many of the Board's proposals, she did not act rudely or disrespectfully towards any individuals while at CBAC meetings.

62.     Plaintiff served on the CBAC until June 2012.

*Id.* ¶¶ 59-62.  The PAC alleges that, by denying Plaintiff employment in October 2012, Defendants retaliated against her on the basis of her speech "as a community member and a taxpayer on a matter of public concern."  *Id.* ¶ 74.

## III.   LEGAL STANDARD

Rule 15(a) of the Federal Rules of Civil Procedure provides that in cases where a party cannot amend as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  *See* FED. R. CIV. P. 15(a); *see also Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991); *Barber v. Hornbeck Offshore Operators, LLC*, No. 11 Civ. 5520, 2014 WL 1010993, at *5 (E.D.N.Y. Mar. 17, 2014); *M.E.S., Inc. v. Liberty Mut. Sur. Group*, No. 10 Civ. 2798, 2014 WL 46622, at *8 (E.D.N.Y. Jan. 6, 2014).  Leave to amend is within the court's discretion.  *Krupski v. Costa Crociere S. p. A.*, 130 S.Ct. 2485, 2489 (2010) (Rule 15(a) "gives a district court discretion to decide whether to grant a motion to amend a pleading before trial."); *MHANY Mgmt. v. Cnty. of Nassau*, 843 F. Supp. 2d 287, 340 (E.D.N.Y. 2012) (noting that "it is ultimately within the sound discretion of the court whether to grant leave to amend").  A court "should freely give leave when justice so requires."  FED. R. CIV. P. 15(a); *Iqbal v. Ashcroft*, 574 F.3d 820, 822 (2d Cir. 2009) (quoting FED. R. CIV. P. 15(a)); *Grace v. Rosenstock*, 228 F.3d 40, 56 (2d Cir. 2000) (same); *Guideone Specialty Mut. Ins. Co. v. Hapletah*, No. 05 Civ. 1401, 2006 WL 1455468, at *1 (E.D.N.Y. May 24, 2004) (Rule 15(a) "provides for a liberal amendment of pleadings.").

"Amendments are generally favored because they tend to facilitate a proper decision on the

merits." *MHANY Mgmt.*, 843 F. Supp. 2d at 340; *Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 302 (E.D.N.Y. 2013) (same) (citing *Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 396 (E.D.N.Y. 1998)).

However, Rule 16(b) provides that where, as here, a court has adopted a discovery scheduling order, that order may only "be modified for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). The purpose of Rule 16(b) is "to offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339–40 (2d Cir. 2000) (internal citations and quotation marks omitted). Thus, "[w]here a scheduling order has been entered, the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,' must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (quoting Fed. R. Civ. P. 15 and 16)); *see Parker*, 204 F.3d at 340; *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012). The balancing act between Rules 15(a) and 16(b) is necessary to prevent a scheduling order from being rendered meaningless and undermine a court's ability to manage its docket. *Eberle v. Town of Southampton,* No. 12 Civ. 4472, 2013 WL 6198298, at *2 (E.D.N.Y. Nov. 27, 2013).

Whether good cause exists under Rule 16(b) turns on the "diligence of the moving party." *Parker*, 204 F.3d at 340. To show good cause, "the movant must demonstrate that it is has been diligent in its effort to meet the Court's deadlines.'" *Chrebet v. Cnty. of Nassau*, No. 09 CV 4249, 2014 WL 1836835, at *11 (E.D.N.Y. May 8, 2014 (quoting *Sokol Holdings, Inc. v. BMD Munai, Inc.*, No. 05 CIV. 3749, 2009 WL 2524611, at *7 (S.D.N.Y. Aug. 14, 2009) *aff'd sub nom. Sokol Holdings, Inc. v. BMB Munai, Inc.*, No. 05 CV 3749 KMW DCF, 2009 WL 3467756 (S.D.N.Y.

Oct. 28, 2009)). "In other words, the party must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met." *Sokol*, 2009 WL 2524611, at *8 (citing *Parker*, 204 F.3d at 340; *Rent–A–Center Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 104 (S.D.N.Y. 2003); *see Perfect Pearl*, 889 F. Supp. 2d at 457. "A party fails to show good cause when the proposed amendment rests on information 'that the party knew, or should have known, in advance of the deadline.'" *Perfect Pearl*, 889 F. Supp. 2d at 457 (quoting *Sokol*, 2009 WL 2524611, at *8); *see Lamothe v. Town of Oyster Bay*, No. 08–cv–2078, 2011 WL 4974804, at *5–6, (E.D.N.Y. Oct. 19, 2011).

While diligence is the "primary consideration" in the good cause analysis, it is not the only consideration. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) (addressing application of Rule 16(b) to situation where Rule 15(a) would otherwise permit amendment as of right). "The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Id.*; *see Hernandez v. Immortal Rise, Inc.*, No. 11 CV 4360, 2013 WL 1703529, at *1 (E.D.N.Y. Apr. 19, 2013) *adopted in part by*, 2014 WL 991715 (E.D.N.Y. Mar. 13, 2014); *Ritchie Risk Limited Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 282 F.R.D. 76, 79 n. 2 (S.D.N.Y. 2012).

Notwithstanding the foregoing principles, leave to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Williams v. Citigroup Inc.*, 659 F.3d 208, 213-214 (2d Cir. 2011) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *SCS Commc'n, Inc. v. Herrick Co., Inc.*, 360 F.3d 329, 345 (2d Cir. 2004). In assessing futility, courts

must analyze "whether a proposed pleading would be able to withstand a dispositive pretrial motion." *Themis Capital, LLC v. Democratic Republic of Congo*, No. 09 Civ. 1652, 2013 WL 1687198, at *6 (S.D.N.Y. Apr. 18, 2013) (citing *Parker*, 204 F.3d at 339); *Touchtunes Music Corp. v. Rowe Int'l Corp.*, 847 F. Supp. 2d 606, 621 (S.D.N.Y. 2012)). With respect to the Rule 15(a) factors, "[t]he party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial or futile." *See Cummings-Fowler v. Suffolk Cmty. Coll.*, 282 F.R.D. 292, 296 (E.D.N.Y. 2012) (citing *Blaskiewicz v. Cnty. of Suffolk*, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998)).

## IV. DISCUSSION

### A. Good Cause Under Rule 16(b)

#### 1. The Parties' Contentions

Pursuant to Rule 16(b)(4), Plaintiff argues that she has asserted "good cause" to modify the April 5, 2013 deadline to amend her Complaint in light of the "newly discovered" evidence revealed during her October 23, 2013 deposition of Superintendent Opiekun. *See* Pl.'s Mem. at 13-17. In particular, Plaintiff asserts that Opiekun's testimony first alerted her to the fact that the District did not re-hire her in October 2012 because of her speech on CBAC. *See id.* at 14. Plaintiff points out that, although she knew prior to Opiekun's testimony "that she served on the CBAC from November 2011 to June 2012," she had "no way of knowing that her protected activity as a member of the CBAC could have formed the basis of Defendants' decision to deny her employment, and therefore, had no reasonable basis for including her CBAC activity as part of her original Complaint." *Id.* at 15. Plaintiff further asserts that the three-month delay between Opiekun's deposition and her request for leave to amend was not "excessive," and in any event,

permitting her proposed amendments would not unfairly prejudice Defendants because "all of the necessary facts are in the record" and no additional discovery will be necessary. *Id.* at 19-20.

In their opposition, Defendants argue that in light of Plaintiff's lack of diligence in seeking leave to amend her Complaint, Plaintiff has failed to demonstrate "good cause" to warrant modification of the CMSO. *See* Defs.' Opp. at 13. According to Defendants, Plaintiff and her counsel were aware well before the close of discovery that Plaintiff's speech as a CBAC member was relevant to her First Amendment retaliation claim based on (i) Plaintiff's own knowledge of her "inappropriate" conduct on CBAC, (ii) the paper discovery exchanged between the parties which reflected that conduct, and (iii) Plaintiff's September 24, 2013 deposition testimony, during which she admitted she believed her criticism of the Board while on CBAC influenced the District's decision not hire her in October 2012. *See id.* at 13-17. Based on the foregoing factors, Defendants assert that Plaintiff had numerous opportunities throughout the discovery process to apprise the Court of her intention to amend her Complaint but failed to do so. *See id.* at 17. Instead, Plaintiff only sought permission to move to amend her Complaint on January 27, 2014, after Defendants sought a pre-motion conference before Judge Seybert and after Plaintiff reviewed Defendants' proposed motion for summary judgment, which "explained that the reason for plaintiff not getting the substitute position was because of her CBAC conduct." *Id.* at 11. In Defendant's view, Plaintiff's motion to amend is no more than a last-minute attempt to bolster her case and "to create another theory of liability." *Id.* For these reasons, Defendants contend that Plaintiffs has not demonstrated the requisite diligence under Rule 16(b).

Defendants further argue that, despite Plaintiff's contentions, they would be unduly prejudiced if Plaintiff's request for leave to amend her Complaint was granted by this Court. *Id.* at 18. In particular, Defendants assert that allowing Plaintiff's proposed amendments would

"significantly delay" this case because Defendants would then have to re-open Plaintiff's deposition and depose "numerous CBAC members" in order to properly investigate Plaintiff's new allegations. *Id.* Defendants also point out that, although summary judgment motions have not "technically" been filed, Plaintiff's proposed amendments would delay summary judgment motion practice by requiring the parties to revise their Rule 56.1 statements after fact discovery "has been re-opened and closed again." *Id.* at 19.

In her reply, Plaintiff reiterates that she was not aware of Defendants' asserted justification for denying her employment in October 2012 until Superintendent Opiekun's deposition testimony. *See* Plaintiff's Reply Memorandum of Law ("Pl.'s Reply") at 5 [DE 32]. In Plaintiff's view, the fact that she "engaged in spirited debate, and disputed important District matters with CBAC members" during CBAC meetings and over email "does not, in any way, create a presumption that she 'knew' the District would cite her CBAC activity as the reason for denying her employment." *Id.* at 5-6. Plaintiff also notes that, while she testified at her deposition that she believed her CBAC activity played a role in the District's decision, she had no evidence to support her belief at the time. *Id.* at 6. As for the reason she waited until after summary judgment motion practice had commenced before requesting leave to amend, Plaintiff states that she "reasonably believed that she was not required to file a motion to amend, because she is not asserting a new claim in this case" but rather "is simply utilizing facts obtained in discovery to amplify and supplement the First Amendment retaliation claim that she asserted in her original Complaint." *Id.* at 7. Finally, Plaintiff maintains that Defendants' claims of prejudice are overstated and, in any event, do not provide proper justification for denying her leave to amend the Complaint. *Id.* at 10.

## 2.    *Analysis*

Having considered the arguments by both parties, the Court finds that, although Plaintiff has not been the most diligent in seeking leave to amend her Complaint, she has demonstrated the requisite "good cause" to modify the scheduling order.  Fed. R. Civ. P. 16(b)(4).  In particular, the Court agrees that Plaintiff's proposed amendments are based upon information which came to light during Plaintiff's deposition of Superintendent Opiekun on October 23, 2013, more than six months after the April 5, 2013 deadline to amend had passed and discovery was nearly closed.  At his deposition, Opiekun confirmed that, as alleged in the original Complaint, he met with Plaintiff in October 2012 and told her, in essence, that the District would not re-hire her as a substitute teacher because it has a long "institutional memory" and feared she would "blur the lines" between her role as a teacher and as a resident.  Opiekun Dep. Tr. at 66:7-8; 67:5-6; 69:22-25.  Plaintiff commenced this action on the theory that the District retaliated against her based on its "institutional memory" of her 2010 opposition to the bond referendum.  The Court finds that Plaintiff had little reason to believe otherwise until Opiekun testified at his deposition that, prior to even meeting with Plaintiff in October 2012, he decided not to put her name on the substitute teacher list because of negative feedback he received from Board members about Plaintiff's behavior on CBAC.  *Id.* at 63:2-11.  Even if Plaintiff suspected that Board members were acting out of a dislike for Plaintiff based on her CBAC conduct, she had nothing but her own speculation until she had Superintendent Opiekun's testimony.

Opiekun further testified that his ultimate decision not to reappoint Plaintiff as a substitute, made after meeting again with the Board in October 2012, was based on information he received from the Board about Plaintiff's conduct on CBAC.  *Id.* at 90:19-91:11.  In light of this evidence, the Court holds that Plaintiff reasonably seeks to supplement her Complaint with factual

allegations about her participation on CBAC in order to assert an additional basis for her First Amendment retaliation claim.

Although Defendants argue that Plaintiff was not diligent in seeking to amend her Complaint, the Court finds that Defendants' delays throughout this litigation also contributed to the lateness of Plaintiff's request. Significantly, Plaintiff served her first set of interrogatories on Defendants on February 11, 2013 (nearly two months prior to the deadline to amend) and asked Defendants to "[i]dentify all individuals who were involved in the decision to deny Plaintiff's application to the District's substitute list in 2012, *and provide the basis for that decision*" Beldner Decl. ¶ 15 (emphasis supplied). Defendants failed to provide this information, however, and instead stated in their response, served on June 19, 2013, that Superintendent Opiekun "did not make a recommendation to the Board to place plaintiff on the 2012 substitute list." *Id.* Defendants' response was incomplete in light of Opiekun's subsequent testimony, and the Court considers that response to be a missed opportunity to avoid the instant motion practice. The record further reveals that Defendants delayed in producing several discovery responses to Plaintiff and were responsible for the initial delay in commencing depositions in this case. Of course, Plaintiff cannot now be heard to complain about Defendants' tardiness when she granted Defendants multiple courtesy extensions of Court-ordered deadlines (contrary to this Court's practice) and failed to bring any discovery issues to the Court's attention. Nevertheless, the Court finds that Defendants' own conduct undercuts their diligence argument.

Ultimately, Defendants do not deny that, prior to Opiekun's testimony, they never disclosed that Plaintiff's conduct on CBAC influenced their decision not to re-hire her in 2012. Rather, Defendants argue that Plaintiff should have been aware of this information given the nature of her conduct on CBAC. The Court finds this argument unpersuasive. Citing affidavits by two

Board members ("the Board member affidavits"), Defendants allege that Plaintiff's behavior on

CBAC was so "inappropriate," "unprofessional and disruptive" that she should have automatically

known it influenced Defendants' employment decision. Defs.' Opp. at 3. Although Defendants

cite the Board member affidavits throughout their opposition, the Court points out that they have

not included those affidavits with their submissions on this motion.[2] The Court therefore will not

consider allegations which are drawn exclusively from the missing affidavits. In any event, the

Court is not required to accept Defendants' one-sided characterization of Plaintiff's behavior on

CBAC when it is clear from the parties' submissions that they dispute several factual issues,

including, for example, (i) how Plaintiff behaved at CBAC meetings, (ii) the tenor of her criticism

of Defendants, and (iii) how Plaintiff's criticisms were received (and how she believed they were

received) by other CBAC members and the Board. These factual disputes are more appropriately

addressed in a motion for summary judgment and the Court will not attempt to resolve these issues

on the instant motion to amend.

Moreover, none of the documents produced prior to Superintendent Opiekun's deposition,

including the CBAC-related emails, show that Plaintiff was previously aware of Defendants'

conduct-based justification for their October 2012 employment decision. Although Plaintiff may

have used offensive language and expressed negative sentiments about Defendants in emails to

CBAC members, the Court finds this conduct would not necessarily in itself have led Plaintiff to

conclude that Defendants did not hire her based on her CBAC-related speech. Likewise, while

Defendants note that they produced "approximately 300 pages of documentation relevant to

---

[2]        In their opposition, Defendants state that the Board member affidavits are attached to the accompanying Declaration of Michael A. Miranda. *See* Defs.' Opp. at 2 n.2. However, the affidavits are not, in fact, attached to that declaration. The Court was also unable to find the affidavits in any other submission on the docket in this case.

Plaintiff's CBAC conduct," none of those documents provided direct evidence linking Defendants' October 2012 employment decision to Plaintiff's participation on CBAC. The Court also notes that Defendants produced the bulk of these documents to Plaintiff on September 20, 2013, just four days before Plaintiff's deposition and approximately one month prior to the close of discovery, and well beyond the deadline in the CMSO for amending pleadings.

As for Plaintiff's deposition testimony on September 24, 2013, the Court finds that, although it would not have been unreasonable for Plaintiff's counsel to seek leave to amend the Complaint upon hearing that his client believed her activity on CBAC played a role in Defendants' employment decision, counsel was not obligated to do so in order to demonstrate diligence under Rule 16(b). As discussed above, Defendants had not produced evidence connecting Plaintiff's CBAC activity to their employment decision at the time Plaintiff was deposed. Moreover, as Defendants admit in their opposition, Plaintiff's testified "for the most part that the November 2010 bond opposition was the reason for the retaliation." Defs.' Opp. at 1 n.1. Thus, the Court declines to find lack of diligence based on Plaintiff's limited deposition testimony to the contrary.

However, the Court finds that Plaintiff has not "provided a robust 'good cause' argument" with respect to her delay in moving to amend once she learned that her speech as a CBAC member was relevant to her First Amendment retaliation claim. *See Balk v. New York Inst. of Tech.*, No. CV 11-509, 2013 WL 6990767, at *9 (E.D.N.Y. Sept. 30, 2013). In fact, Plaintiff has hardly attempted to explain why she (i) waited nearly three months after Opiekun's deposition to seek leave to amend her Complaint, and (ii) commenced summary judgment motion practice before requesting permission to assert her CBAC-related allegations. Defendants accuse Plaintiff of engaging in "gamesmanship" by waiting until after the parties' exchanged Rule 56.1 Statements to move to amend her Complaint. Defs.' Opp. at 11. The Court interprets Defendants' claim as

asserting that Plaintiff's motion has been made in bad faith. Plaintiff, however, maintains that her delay was unintentional, as she "reasonably believed" she was not required to get permission from the Court to "supplement the First Amendment retaliation claim that she asserted in her original Complaint." Pl.'s Reply at 7. While the Court finds no evidence of "bad faith . . . [or] dilatory motive" with respect to Plaintiff's proposed amendments, *Balk*, 2013 WL 6990767, at *10, Plaintiff's counsel should have been aware that leave from the Court was needed to amend the Complaint to include allegations which create a new factual basis for her First Amendment claim.

In addition to a party's diligence, courts can consider other factors under Rule 16(b), such as prejudice to the non-moving party. *Kassner*, 496 F.3d at 244. Here, the Court is not convinced that Defendants would be prejudiced by the assertion of Plaintiff's new allegations. First, Defendants' delays during the discovery process, which the Court discussed previously, belie their claim of prejudice. Second, Plaintiff is not attempting to raise a new legal theory or add a new cause of action. Rather, she seeks to assert additional facts which support her existing First Amendment retaliation claim. Third, the parties have already exchanged a significant amount of discovery regarding Plaintiff's activity on the CBAC. In particular, the parties have produced hundreds of pages of CBAC-related emails and, during Plaintiff's deposition, Defendants questioned Plaintiff extensively about those emails as well as her participation on the committee. Defendants have also obtained affidavits from two Board members describing Plaintiff's behavior on CBAC, which Defendants intended to use to support their motion for summary judgment. Although Defendants assert that Plaintiff's new allegations will require them to take additional depositions, Defendants do not address the alternative possibility of obtaining further affidavits from other CBAC members, if necessary. In any event, "'the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a

pleading.'" *Balk*, 2013 WL 6990767, at *10 (quoting *Bernhard v. Central Parking Sys. of New York, Inc.*, 282 F.R.D. 284, 291 (E.D.N.Y. 2012)); *see Bridgeport Music Inc. v. UMG Recordings. Inc.*, 2008 WL 113672, at *3 (S.D.N.Y. Jan. 10, 2008).

That being said, the Court finds Plaintiff's claim that Defendants will suffer *no* prejudice is overstated. The Court agrees with Defendants that they should be permitted to explore Plaintiff's new allegations, through depositions or otherwise, to the extent necessary for them to mount a proper defense. Despite Plaintiff's insistence to the contrary, *see* Pl.'s Mem. at 20, additional discovery will likely be necessary to flesh out Plaintiff's new allegations. Indeed, Plaintiff acknowledges the potential for additional discovery in her reply by stating that she is "perfectly willing" to respond to additional questions about her participation on CBAC, presumably at a re-opened deposition. Pl.'s Reply at 10. Whether or not the additional discovery is significant, there is little doubt that the case will remain for some additional time in the discovery phase and, as such, any potential trial will be delayed. Moreover, Defendants are correct that the parties will likely have to revise their Rule 56.1 Statements and other submissions on Defendants' anticipated summary judgment motion to account for Plaintiff's new allegations and, presumptively, some additional evidence. However, the motions have not been filed and the parties will have time to make any revisions or additions in the interim.

Ultimately, the determination whether to grant leave to amend "is within the Court's discretion[] taking into account the totality of the circumstances." *Balk*, 2013 WL 6990767, at *9. Under the unique circumstances presented here, the Court concludes that, although Plaintiff has neither "been a model of diligence . . . nor provided a robust 'good cause' argument" in support of her motion to amend, *id.*, Plaintiff also has not been slacking in fulfilling her discovery obligations

and has made a sufficient showing of "good cause" under Rule 16(b) for the Court to permit her to file an amended Complaint.

### B.     Futility Under Rule 15(a)

If the party seeking the amendment satisfies the "good cause" standard of Rule 16(b), the court then determines whether the movant also meets the liberal standards of Rule 15(a). *See Kassner*, 496 F.3d at 244. Here, the parties have addressed their arguments as to bad faith, undue delay, and prejudice in their discussion of whether Plaintiff has met Rule 16(b)'s good cause standard. However, Defendants also assert that Plaintiff's proposed amendment would be futile under Rule 15(a) because Plaintiff did not engage in protected speech as a member of CBAC. *See* Defs.' Opp. at 20. Specifically, Defendants argue that, although "[P]laintiff may have ostensibly been discussing matters of importance to the District during CBAC meetings," the evidence the parties have exchanged during discovery – particularly, the emails Plaintiff wrote to CBAC chairman Joe Pepe – demonstrate that Plaintiff's CBAC-related speech was, instead, aimed at redressing her "personal vendetta" against Defendants and, therefore, is not protected under the First Amendment. *Id.*

Defendants' arguments reveal their misapprehension of the Court's role in assessing futility under Rule 15(a). "A proposed amendment to a pleading is deemed to be futile if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis." *Yin v. N. Shore LIJ Health Sys.*, 20 F. Supp. 3d 359, 366 (E.D.N.Y. 2014) (quoting *Kirk v. Heppt*, 423 F.Supp.2d 147, 149 (2d Cir.2006)); *see Oneida Indian Nation of New York v. City of Sherrill,* 337 F.3d 139, 168 (2d Cir. 2003). The Court, therefore, reviews the proposed amendments for futility pursuant to Rule 12(b), under which the Court must accept the factual allegations set forth in the pleading as true and draw all reasonable inferences in favor of the

Plaintiff.  *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Gov't Employees Ins. Co. v. U.S.*, No. 13 Civ. 4063, 2014 WL 582164, at *2 (E.D.N.Y. Feb. 14, 2014).  "In conducting this motion to dismiss standard of review, the Court is bound to adjudicate the motion without resorting to any outside evidence."  *Mahar v. U.S. Xpress Enterprises, Inc*., No. 1:06-CV-1297, 2009 WL 2227583, at *1 (N.D.N.Y. July 21, 2009) (citing *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989) ("On a motion to dismiss, the district court must limit itself to a consideration of the facts alleged on the face of the complaint and to any documents attached as exhibits or incorporated by reference.")).  "In essence, the Court's review is relegated to the four corners of the proposed . . . amended complaint."  *Id.*  Additionally, unless a proposed amendment is "clearly frivolous or legally insufficient on its face . . . the substantive merits of a claim or defense should not be considered in a motion to amend."  *In re Boesky Sec. Litig.*, 882 F. Supp. 1371, 1379 (S.D.N.Y. 1995) (quoting *Lerman v. Chuckleberry Publications, Inc.*, 521 F. Supp. 228, 231 (S.D.N.Y.1981)); *see Bailey v. Fortier*, No. 09-CV-0742, 2010 WL 4005258, at *9 (N.D.N.Y. Aug. 30, 2010), *adopted by* 2010 WL 3999629 (N.D.N.Y. Oct. 12, 2010).  Ultimately, a plaintiff need only allege "'enough facts to state a claim to relief that is plausible on its face.'"  *Roman Catholic Diocese of Rockville Ctr., N.Y. v. Inc. Vill. of Old Westbury*, No. 09 CV 5195, 2012 WL 1392365, at *5 (E.D.N.Y. Apr. 23, 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Here, rather than accepting all well-pleaded facts as true, Defendants attempt to transform Plaintiff's motion for leave to amend into a summary judgment exercise.  *See Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, No. 13 CIV. 1654, 2014 WL 2610608, at *15 (S.D.N.Y. June 10, 2014) (noting that "the primary purpose of confining a court's analysis to the four corners of the complaint is to protect plaintiffs from summary judgment motions in the guise of motions to

dismiss[.]") (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).

Indeed, Defendants' contention that Plaintiff's proposed amendments are futile is based entirely on factual arguments which go to the merits of Plaintiff's First Amendment retaliation claim. *See Mahar*, 2009 WL 2227583, at *1 (declining to engage in a Fed. R. Civ. P. 56 analysis on a motion to amend); *Anthony, by Anthony v. Facey*, No. 93 CV 4527, 1995 WL 362493, at *2 (E.D.N.Y. June 8, 1995) (setting aside order on motion to amend where the magistrate judge "ignored the standard mandated by Rule 12(b)(6) to accept the allegations of the complaint as true and, instead, reviewed and adjudicated the substantive merits of plaintiffs' claim against [a defendant]."). Moreover, Defendants have asked the Court to review documents and proof outside the contours of the PAC which, as noted above, contravenes the Rule 12(b)(6) standard. *Mahar*, 2009 WL 2227583, at *1; *see Journal Pub. Co. v. Am. Home Assur. Co*., 771 F. Supp. 632, 635 (S.D.N.Y. 1991) (stating that "it is axiomatic that a court may not look beyond the face of the complaint on a motion to dismiss for failure to state a claim" and that the court therefore "will consider only the sufficiency of the allegations contained in the Proposed Amended Complaint."). Accordingly, Defendants' arguments concerning the sufficiency of the evidence supporting Plaintiff's First Amendment claim are misplaced and premature. The only issue before the Court is whether the amendments, under familiar Rule 12(b)(6) standards, allege a legally cognizable claim, not whether that claim is borne out by the facts or could possibly be dismissed on a motion for summary judgment.

The Court now turns to the issue of whether Plaintiff's proposed amendments state a plausible claim for First Amendment retaliation against the Defendants. To establish a prima facie case of First Amendment retaliation under Section 1983, "a plaintiff must show 1) that his speech was constitutionally protected; 2) that he suffered an adverse employment action; and 3) that a

causal relationship existed between the speech and the adverse employment action." *Miller v. N.Y. City Dep't of Educ.*, No. 13 Civ. 8114, 2014 WL 6772138 at *6 (S.D.N.Y. Dec. 2, 2014) (citing *Burkybile v. Bd. of Educ. of Hastings–On–Hudson Union Free Sch. Dist.,* 411 F.3d 306, 313 (2d Cir. 2005)). "For a public employee's speech made in the course of employment to warrant constitutional protection, the employee must show that he 'spoke as a citizen on a matter of public concern.'" *Fotopolous v. Bd. of Fire Comm'rs of the Hicksville Fire Dist.*, 11 F. Supp. 3d 348, 360 (E.D.N.Y. 2014) (quoting *Garcetti v. Ceballos,* 547 U.S. 410, 417 (2006)). "'To constitute speech on a matter of public concern, an employee's expression must be fairly considered as relating to any matter of political, social, or other concern to the community.'" *Weslowski v. Zugibe*, 14 F. Supp. 3d 295, 312-313 (S.D.N.Y. 2014) (quoting *Jackler v. Byrne*, 658 F.3d 225, 236 (2d Cir. 2011)). "By contrast, '[s]peech that, although touching on a topic of general importance, primarily concerns an issue that is personal in nature and generally related to the speaker's own situation . . . does not address matters of public concern.'" *Id.* at 313 (quoting *Jackler*, 658 F.3d at 236).

Here, Plaintiff has plausibly alleged that her speech as a CBAC member touched on matters of public concern. *See Morris v. Lindau,* 196 F.3d 102, 110 (2d Cir. 1999) ("[S]peech on any matter of political, social, or other concern to the community is protected by the First Amendment.") (quoting *Connick v. Myers,* 461 U.S. 138, 146 (1983)) (internal quotation marks omitted). In particular, Plaintiff's PAC alleges that, during her time on the CBAC, Plaintiff "expressed strong opinions" about Defendants and "openly criticized" their policies, including (i) "the consistent overestimation of budget expenditures"; (ii) "the mismanagement of financial resources"; and (iii) the "high" cost of the District Administration salaries." PAC ¶ 60. Plaintiff also "strongly advocated against fiscal cuts to academic programs in the District, when there were

other viable options for savings." *Id.* ¶ 61. The PAC notes that "Plaintiff's positions regarding the budget were unpopular with the Board[] and the District's Administration," both of which had members who participated in and attended CBAC meetings." *Id.* ¶¶ 59, 61. The Court concludes that these allegations are sufficient to show that her speech as a CBAC member was protected under the First Amendment.

Moreover, under the second prong of the test to establish a *prima facie* case of First Amendment retaliation, Plaintiff has adequately alleged that she was subjected to an adverse employment action. It is well settled that, in the First Amendment retaliation context, an "adverse employment action" includes "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002); *Kaluczky v. City of White Plains*, 57 F.3d 202, 209 (2d Cir. 1995). Here, the PAC alleges that Plaintiff worked as substitute teacher for the District in the Fall of 2012 prior to Defendants' decision not to permanently add her to the substitute teacher list. PAC ¶ 67. Thus, Plaintiff was either terminated or Defendants' refused to hire her, either of which is sufficient to state a *prima facie* claim of First Amendment retaliation.

Finally, the facts set forth in the PAC demonstrate a causal connection between Plaintiff's protected activity and the adverse employment action. "The causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action, that is to say, the adverse employment action would not have been taken absent the employee's protected speech." *Hughes v. Town of Bethlehem*, No. 10 Civ. 1489, 2013 WL 1336341, at *3 (N.D.N.Y. Mar. 29, 2013) (quoting *Morris*, 196 F.3d at 110). "Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of

retaliatory animus." *Id.* (quoting *Morris*, 196 F.3d at 110). Here, Plaintiff engaged in a protected activity as a member of the CBAC between November 2011 and June 2012. PAC ¶ 62. Defendants' decision to deny Plaintiff employment was made approximately four months later in October 2012. *Id.* ¶¶ 62, 74. The Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001), and the Court finds the temporal proximity alleged here provides for a plausible inference of causation, particularly since it is reasonable to assume that little business was being conducted by the Board over the summer months when school was not in session. *See Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (causal connection plausible despite six month gap between protected activity and retaliation.); *Sassone v. Quartararo*, 598 F. Supp. 2d 459, 467 (S.D.N.Y. 2009) (causal connection despite six month gap).

For these reasons, the Court concludes that Plaintiff's proposed amendments state a plausible claim of First Amendment retaliation and Defendants have not met their burden of proving futility under Rule 15(a).

## V.    CONCLUSION

Based on the foregoing analysis, Plaintiff's motion to amend her Complaint is GRANTED. Plaintiff is directed to file the Amended Complaint on ECF within five days.

**SO ORDERED.**

Dated: Central Islip, New York
       March 31, 2015

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge